Case No. 22-1805

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

Jose Antunes,
*Plaintiff/Appellant*,

v.

Gerdau MacSteel, Inc., et al.,
*Defendants/Appellees*

On Appeal from an Order and Judgment of the
United Stated District Court for the Eastern District of Michigan,
Case No. 20-cv-10724, Hon. Mark A. Goldsmith

**PLAINTIFF/APPELLANT'S CORRECTED BRIEF ON APPEAL**

| | |
|---|---|
| **GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C.** | LITTLER MENDELSON, P.C. |
| Ray Carey (P33266) | Jacklyn R. Giffen (P75316) |
| Attorneys for Plaintiff | 200 Renaissance Center |
| 30500 Northwestern Hwy. Suite 425 | Suite 3110 |
| Farmington Hills, MI 48334 | Detroit, Michigan 48243 |
| Telephone: (248) 865-0001 | (313) 466-6400 |
| Facsimile: (248) 865-0002 | jgiffen@littler.com |
| rcarey@gmgmklaw.com | |

## STATEMENT OF CORPORATE DISCLOSURE

Pursuant to F. R. A. P. 26.1 and F. R. A. P. 28, Plaintiff-Appellant makes the following disclosure:

1. Is the said party a subsidiary or affiliate of a publicly owned corporation?

   Answer: No.

2. Is there a publicly owned corporation, not a party to the appeal that has a financial interest in the outcome of the appeal?

   Answer: No.

# TABLE OF CONTENTS

STATEMENT OF CORPORATE DISCLOSURE .........................................ii

TABLE OF CONTENTS.................................................................iii

TABLE OF AUTHORITIES ...................................................iv-vii

STATEMENT SUPPORTING ORAL ARGUMENT... .........................viii-x

STATEMENT OF JURISDICTION... .......................................... xi

STATEMENT OF ISSUES PRESENTED...................................... xii

STATEMENT OF THE CASE...................................................... 1

    I.      INTRODUCTION....................................................... 1

    II.     RELEVEANT PROCEDURAL HISTORY .............................. 3

    III.    FACTS PRESENTED TO THE DISTRICT COURT .............. 4

SUMMARY OF THE ARGUMENT .......................................... 24

STANDARD OF REVIEW ..................................................... 26

ARGUMENT... ................................................................... 27

CONCLUSION..................................................................... 47

CERTIFICATE OF SERVICE ................................................. 47

CERTIFICATE OF COMPLIANCE WITH THE RULE 32(g)... .............. 48

ADDENDUM... ..............................................................49-50

## TABLE OF AUTHORITIES

**Cases:**

*Accord Edmondson v. Simon,* 497 F. Supp. 411, 414 (N.D. Ill. 1980)...................45

*Anderson v. Conboy*, 156 F.3d 167 (2nd Cir. 1998) .................................................29

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)....................................26

*Ariel, S.R. L. v. PCC Airfoils, LLC*, 448 F.3d 899, 908-910 (6th Cir. 2006) ........27

*Beck-Wilson,* 441 F.3d 353, 362-363 (6th Cir. 2006)........................................44, 46

*Borg-Warner Acceptance Corp., v. Dep't of State*, 169 Mich. App. 587, 590,
426 N.W. 2w 717 (1988) ........................................................................................38

*Briggs v. Potter*, 463 F.3d 507, 513 (6th Cir. 2006)................................................27

*Buntin v. Breathitt Cty. Bd. Of Educ.,*134 F.3d 796, 799-801 (6th Cir. 1998)...43, 44

*Carpenters v. Anderson,* 119 S. Ct. 1495, *cert. dismissed*, 119 S.Ct.2418
(June 24, 1999).......................................................................................................29

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) ...........................................26, 28

*Chattman v. Toho Tenax Am., Inc*., 686 F.3d 339, 350–51 (6th Cir. 2012) ......34, 37

*Chrysler Corp. v. Skyline Indus. Servs., Inc.,* 448 Mich. 113, 125,
528 N.W.2d 698, 702-703 (1995)..........................................................................39

*Corning Glass Works v. Brennan,* 417 U.S. 188, 195 (1975) ...........................43, 46

*DeBrow v Century 21 Great Lakes, Inc,* (After remand), 463 Mich. 534;
620 N.W. 2d 836 (2001) ...................................................................................30, 33

*DeNoma v. Hamilton Cty. Ct. of Common Pleas*, 626 Fed. Appx. 101,
110 (6th Cir. 2015)............................................................................................34, 37

*Fabela v. Socorro Independent School Dist.*, 329 F.3d 409, 415
 (5th Cir. 2003)..................................................................................................31, 33

*Fraser v. Goodale,* 342 F.3d 1032, 1036 (9th Cir.2003) ....................................28

*Gleklen v. Democratic Cong. Campaign Comm., Inc.,* 199 F.3d 1365,
1369 (D.C.Cir.2000) .............................................................................................28

*Graham v Ford,* 237 Mich. App. 670, 676-677; 604 N.W.2d 713 (1999) .............33

*Hauschild v. United States,* 532 Fed. Cl. 134, 141 (2002) ......................44

*Hazle v. Ford Motor Co*, 464 Mich. 456; 628 N.W. 2d 515 (2000).................29, 30

*Hill v. J.C. Penny,* 688 F.2d 370, 373-74 (5th Cir. 1982)........................45

*Hodgson v. Brookhaven Hospital*, 436 F.2d 719, 725 (5th Cir.1970)......................44

*Holloway v. Brush,* 220 F.3d 767, 772 (6th Cir. 2000) ...........................26

*Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) ..........................................27

*In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) ........................................38

*Jacklyn v. Schering-Plough Healthcare Products Sales Corp*, 176 F.3d 921, 926 (6th Cir. 1999).................................................................30

*J.F. Feeser, Inc. v. Serv-A-Portion, Inc.,* 909 F.2d 1524, 1542 (3rd Cir.1990)..28

*Johnson v. University of Cincinnati*, 215 F.3d 561, 572-573, 573 n.5,574-575 (6th Cir. 2000) ....................................................................28, 29

*Kipin Indus., Inc. v. Van Deilen Int'l, Inc.("Kipin"),*182 F.3d 490, 493 (6th Cir.1999)...................................................................39, 42

*LaFontaine Saline, Inc., v. Chrysler Corp*., 496 Mich. 26, 852 N.W. 2d. 78, 84 (2014) .............................................................................39, 41, 42

*Matras v. Amoco Oil Co.,* 424 Mich. 675, 385 N.W.2d 586 (1986).............32, 33

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* ("*Matsushita*")
 475 U.S. 574, 587 (1986)................................................................26

*McMillian v. Johnson,* 88 F.3d 1573, 1584 (11th Cir.1996)..............................28

*Miller v. Stevens,* 224 Mich. 626, 632, 195 N.W. 481, 482 (1923).......38, 40, 41, 42

*Odomes v. Nucare, Inc*., 653 F.2d 246, 250 (6th Cir. 1981)....................................44

*Pierson v. Quad/Graphics*, 749 F,3d 530, 537-539 (6th Cir. 2014).........................35

*Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S. Ct. 1775, 104 L.Ed.2d 268 (1989) ..........................................................................30, 31

*Ricci v. DeStefano*, 557 U.S. 557, 586 (2009*)*........................................................26

*Scott v. Harris*, 550 U.S. 372, 380 (2007) .............................................................27

*Sharp v. Aker Plant Servs. Grp., Inc.,* 726 F.3d 789, 796 (6th Cir. 2013) ..............27

*Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044 (7th Cir. 1999)......................31, 32

*Sniecinski v. Blue Cross & Blue Shield of Michigan*, 469 Mich. 124, 133, 666 N.W.2d 186 (2003) ...............................................................................29, 30, 33

*State Hwy Comm'r v. Detroit City Controller*, 331 Mich. 337, 352; 49 NW2d 318 (1951) ...............................................................................39, 41, 42

*Staub v. Proctor Hospital,* 562 U.S. 411, 419 (2011) ........................................34, 37

*Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S. Ct. 613, 83 L.Ed.2d 523 (1985) ........................................................................................30

*Venters v. City of Delph*i, 123 F.3d 956, 973 (7th Cir. 1997) ...........................31, 32

*Von Hoffman v. City of Quincy,* 71 U.S. 535, 550 (1866) ..........................39, 41, 43

*Wetzel v. Liberty Mutual Ins. Co.,* 449 F. Supp. 397, 403-04 (W.D. Pa. 1978)......45

*Wexler v. White's Fine Furniture*, 317 F.3d 564 (6th Cir. 2003) .................25, 26, 32

*White v. Baxter Healthcare Corp*., 533 F.3d 381 (6th Cir. 2008) ............................25

**Statutes and Regulations:**

Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") .......................viii, xi, xii, 1

M.C.L.A. §§ 37.2101, *et seq*...................................................................................xi

M.C.L.A. § 37.2202 ..................................................................................................xi

M.C.L.A. § 37.2206(2)..............................................................................................29

M.C.L.A. §37. 2206 (2) (a)-(c) .........................................................................31, 33

28 U.S.C. §1291 ........................................................................................................xi

28 U.S.C. §1331 ........................................................................................................xi

28 U.S.C. §1343 ........................................................................................................xi

29 U.S.C. § 206(d) .......................................................................... viii, xi, 1, 43

29 U.S.C. § 216(b) ....................................................................................................xi

42 U.S.C. §1981 ................................................................viii, xi, xii, 1, 3

**Court Rules:**

F.R.A.P. 4(a)(1)................................................................................xi

F.R.A.P. 34 ................................................................................ viii

Fed. R. Civ. P. 56.........................................................................ix, 25, 26

## STATEMENT SUPPORTING ORAL ARGUMENT

Plaintiff/Appellant Jose Antunes ("Plaintiff" or "Mr. Antunes") requests oral argument pursuant to F.R.A.P. 34, 6th Cir. R. 28(b)(1)(B), and 6th Cir. R. 34(a).

Mr. Antunes has appealed to this Court from the JUDGMENT dismissing each of his claims against Defendants, Gerdau MacSteel, Inc. ("Gerdau MacSteel"), and Rodrigo Belloc ("Belloc") (collectively "Defendants"), with prejudice **[R. 51]** and the OPINION & ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION TO STRIKE (Dkt.37), (2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 28), (3) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 29), and (4) DENYING AS MOOT THE PARTIES JOINT MOTION TO EXTEND TRIAL-RELATED DATES (Dkt. 48) **[R. 50]** ("the Opinion and Order"). These were issued on August 24, 2022, by the United States District Court for the Eastern District of Michigan, Case No. 20-cv-10724, Honorable Mark A. Goldsmith, concerning Mr. Antunes's claims against Defendants for employment discrimination and interference with his protected rights in violation of 42 U.S.C. §1981 and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCLA §§ 37.2101, *et seq.*, unequal pay in violation of the Equal Pay Act of 1963 , 29 U.S.C. § 206(d), and breach of an implied employment contract and against Belloc for tortious interference with his employment contract and advantageous business relationship with Gerdau MacSteel. Mr. Antunes's

claims are premised on his employment relationship with Gerdau MacSteel and the circumstances preceding and culminating with the termination of his Gerdau MacSteel employment.

Mr. Antunes asserts that the District Court committed reversible error when it rendered the judgment in favor of Defendants because its Opinion and Order manifests that it erroneously:

**(A)** misapplied apposite principles of law when it struck and declined to consider most of the evidence detailed in and exhibits attached to an Affidavit he submitted in opposition to Defendants' motion for summary judgment, which in addition to the other evidence in the record is probative of and discloses that genuine issues of material fact remain with respect to each of his claims, and

**(B)** misapplied apposite principles of substantive law, weighed conflicting evidence in the record, and made findings of fact and credibility determinations in favor of Defendants, instead of evaluating the evidence in the record and inferences permissibly drawn from the evidence in a light most favorable to Mr. Antunes in the manner required by Fed. R. Civ. P. 56,  when it denied his motion for partial summary judgment with respect to his claims for breach of an employment contract and granted Defendants' motion for summary judgment with respect to his claims.

Accordingly, oral argument will allow counsel for Mr. Antunes the opportunity to ensure that a full presentation of apposite principles of law, evidence

in the record, the facts in dispute, and Mr. Antunes's legal theories are provided to the Court and to answer any questions this Court may have about these matters.

## STATEMENT OF JURISDICTION

The District Court for the Eastern District of Michigan had original subject matter jurisdiction over Mr. Antunes's claims for violation of 42 U.S.C. §1981 and the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), pursuant to 28 USC § 1331 (federal question jurisdiction), 28 USC §1343 (civil rights), and 29 USC § 216(b) (EPA). It exercised supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Mr. Antunes's claims against Defendants for employment discrimination and interference with his protected rights in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L.A. §§37.2101, *et seq.*, breach of express or implied contract, and tortious interference with an employment contract and advantageous business relationship.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291 because the District Court in Case No. 20-CV-10724 issued the Opinion and Order **[R. 50]** and entered the Judgment dismissing each of Mr. Antunes's claims against Defendants with prejudice **[R. 51]** that are the subjects of this appeal on August 24, 2022; the Judgment constituted a final order or judgment that disposed of all claims as matter of law and closed the case; and Mr. Antunes timely filed his Notice of Appeal in the District Court on September 9, 2022 **[R. 52]**, less than 30 days after the entry of the Opinion and Order and final Judgment. *See* FRAP 4(a)(1) and Notice of Appeal **[R. 52]**.

## STATEMENT OF ISSUES PRESENTED

I.  Did the District Court commit reversible error when it granted Defendants' motion to strike most of Mr. Antunes's Affidavit and declined to consider the evidence detailed in and exhibits attached to his Affidavit which in addition to the other evidence in the record is probative of his claims and discloses that genuine issues of material fact remain with respect to each of his claims?

II.  Did the District Court commit reversible error when it granted Defendants' motion for summary judgment and failed to find that genuine issues of material fact remain with respect to Mr. Antunes's claims for discrimination against him and interference with his protected rights in violation of 42 U.S.C. §1981 and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCLA §§ 37.2101, *et seq.*, and for unequal pay in violation of the Equal Pay Act of 1963, 29 U.S.C. 206(d)?

III. Did the District Court commit reversible error when it denied Mr. Antunes's motion for partial summary judgment with respect to his claims for breach of his employment contract with Defendant Gerdau MacSteel, Inc.?

IV. Did the District Court commit reversible error when it granted Defendants' motion for summary judgement and failed to find that genuine issues of material fact remain with respect to Mr. Antunes's claims for breach of an employment contract?

# STATEMENT OF THE CASE

## I.    INTRODUCTION

Plaintiff/Appellant Jose Antunes ("Plaintiff" or "Mr. Antunes") has appealed to this Court from the JUDGMENT dismissing each of his claims against Defendants, Gerdau MacSteel, Inc. ("Gerdau MacSteel"), and Rodrigo Belloc ("Belloc") (collectively "Defendants"), with prejudice **[R. 51]** and the OPINION & ORDER: (1) GRANTING IN PART DEFENDANTS' MOTION TO STRIKE (Dkt.37), (2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 28), (3) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 29), and (4) DENYING AS MOOT THE PARTIES JOINT MOTION TO EXTEND TRIAL-RELATED DATES (Dkt. 48) **[R. 50]** ("the Opinion and Order"). These were issued on August 24, 2022, by the United States District Court for the Eastern District of Michigan, Case No. 20-cv-10724, Honorable Mark A. Goldsmith, concerning Mr. Antunes's claims against Defendants for employment discrimination and interference with his protected rights in violation of 42 U.S.C. §1981 and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCLA §§ 37.2101, *et seq.*, unequal pay in violation of the Equal Pay Act of 1963 , 29 U.S.C. § 206(d), and breach of an implied employment contract and against Belloc for tortious interference with his employment contract and

advantageous business relationship with Gerdau MacSteel[1]. **[Complaint: R. 1, PageID. 1-61].**

## A.    Mr. Antunes's Allegations and Claims

Mr. Antunes's claims are premised on his employment relationship with Gerdau MacSteel and the adverse employment actions he experienced in the circumstances leading up to and which culminated in the termination of his Gerdau MacSteel employment, effective December 6, 2019:

**(1)** Gerdau MacSteel's and Belloc's rejection of Mr. Antunes for an Operations Strategic Controller ("OSC") position at Gerdau MacSteel, the selection of a young Brazilian for the position and to replace Mr. Antunes, and the concomitant termination of Mr. Antunes's employment because of his age in violation of the ELCRA;

**(2)** Gerdau MacSteel's and Belloc's refusal to provide the social security, severance, vacation, advance notice of employment termination, relocation and return, and other benefits due to Mr. Antunes as specified in the labor and other laws of Brazil when his employment was wrongfully terminated in breach of his employment contract with Gerdau MacSteel;

---

[1] Mr. Antunes has decided to abandon his claims against Belloc for tortious interference.

**(3)** Gerdau MacSteel's previous refusals to promote Mr. Antunes and to provide additional compensation and benefits to him when he had assumed additional duties and responsibilities because of his alienage or status as a Brazilian expatriate and citizen in violation of 42 U.S.C. §1981 and because of his national origin and sex in violation of the ELCRA; and

**(4)** Gerdau MacSteel's previous failure to compensate Mr. Antunes with annual salary that was at least equal to what a female peer received because of his sex in violation of the EPA; and

**[Complaint: R. 1, PageID. 1-61]**

## II.  RELEVANT PROCEDURAL HISTORY

Mr. Antunes filed his Complaint in this matter on March 13, 2020 **[R. 1]**. Defendants filed their Answer to the Complaint on May 18, 2020 **[R. 9].**

On March 24, 2021, Mr. Antunes filed a motion for partial summary judgment with respect to his claims for breach of contract **[R. 28]** and Defendants filed a Motion for Summary Judgment seeking dismissal of all Counts included in Mr. Antunes's Complaint **[R. 29].** Defendants timely filed their response and brief in opposition to Plaintiff's motion **[R. 33]** and Mr. Antunes timely filed his response, brief, and a Fact Appendix containing evidence in support of his opposition to Defendants' motion **[R. 35-36, 40-1]** on April 14, 2021.  Mr. Antunes filed a corrected brief in opposition to Defendants' motion for summary judgment on May

7, 2021**[R. 40, 40-1]**, in response to Defendants' Motion to Strike Plaintiff's Summary Judgment "Counter-Statement of Material Facts", Response Brief, and Affidavit (ECF Nos. 35-1 and 36-1) **[R. 37]**.

On August 24, 2022, the District Court Judge issued the Opinion and Order **[R. 50]** and entered the final Judgment **[R. 51]** from which this appeal has been taken.    Mr. Antunes timely filed his Notice of Appeal in the District Court on September 9, 2022 **[R. 52]**.

## III.    FACTS PRESENTED TO THE DISTRICT COURT[2]

### A. Mr. Antunes's Characteristics and terms and Condition of His Co-Employment Relationships

Mr. Antunes was born on August 4, 1968, was a 51-year-old male citizen of Brazil when his Gerdau MacSteel employment was terminated, and is a person of Brazilian ancestry and national origin. R**. 9, Page ID.** 91; Antunes, 20: 23-22: 19: R. 36-2, PageID. 1487-1488. He is a highly educated and experienced finance, audit, and accounting executive with a Bachelor Degree in Accounting and an MBA in Finance and over 28 years of experience working in these fields of expertise. R**. 9,**

---

[2] The District Court committed reversible error because it erroneously declined to consider most of the evidence detailed below which is probative of and discloses that genuine issues of material fact remain with respect to each of Mr. Antunes's claims.

**Page ID.** 91, 96, 98-99, 104-106; Antunes Affidavit, ¶¶ 3-9, 21: R. 36-1, PageID. 1365-1369, 1375-1387; Antunes, 22:4-23:8: R. 36-2, PageID. 1488.

Gerdau S.A. is a Brazilian corporation and global steel industry conglomerate which owns Gerdau Ameristeel, Inc. ("Gerdau Ameristeel"), and Gerdau MacSteel, two of its multiple U. S. subsidiaries. Antunes, 13: 20-14: 4: R. 28-3, PageID.353-354; Belloc, 12:21-14:16: R.28-4, PageID. 474-475; Rodrigues,13:10-14:16: R. 28-5, PageID. 483-484[3]. Mr. Antunes commenced employment as a Technical Advisor with Gerdau S.A. at its corporate offices in Brazil on November 3, 2003. Antunes, 25:12-15: R. 36-2, PageID. 1488.

Gerdau S.A. transferred Mr. Antunes to work in the U.S. at Gerdau Ameristeel in November, 2006. Antunes,13:20-39:25, 58:18-63:23: R. 28-3, PageID. 353-360, 365-366. Mr. Antunes received compensation and various benefits from both Gerdau S.A. and Gerdau Ameristeel while he worked at Gerdau Ameristeel from November 1, 2006, until on or about June 1, 2008, when he was transferred to Gerdau MacSteel to become its Financial Planning Manager[4]. Antunes, 14: 9-15:16, 25:12-29:25, 30:1-32:10, 58:18-59:10: R. 28-3, PageID. 353-360, 365-366. Mr. Antunes was the Gerdau Macsteel Financial Planning Manager and later its Accounting Manager between June 1, 2008, and December 6, 2019. Antunes, 58:18-59:10: R.28-3,

---

[3] Mr. Belloc is the president of Gerdau MacSteel and Mr. Andre Rodrigues is its former Vice President of Human Resources.
[4] Gerdau S.A. acquired Gerdau MacSteel in April, 2008.

PageID. 365-366. He received compensation and various benefits from both Gerdau S.A. and Gerdau MacSteel from Junes 1, 2008, until April 1, 2014. Antunes, 30:1-37:5, 59:11-63:23, 182:1-18: R. 28-3, PageID. 359-366, 372. *See also* Rodrigues, 81:21-115:1: R. 28-5, PageID. 486-495.

Under the Federative Republic of Brazil Constitution of 1988, as amended ("Constitution"), and the labor laws of Brazil[5]:

- Mr. Antunes's Gerdau S.A., Gerdau Ameristeel, and Gerdau MacSteel "[e]mployment [was] protected against arbitrary dismissal or dismissal without cause…" and Gerdau S.A., Gerdau Ameristeel, and Gerdau MacSteel also were prohibited from discriminating against Mr. Antunes with respect to terms and conditions of employment based on his sex, age, color or marital status. Brazil Constitution of 1988, as amended, Title II, Art. 7, Sections I-III: R. 28-8, PageID. 523-544; Articles 2-3, 442-443, 447: R. 28-6, PageID. 510-517; Articles 1-3, 7-9, 12-14, 19-20: R. 28-7, PageID. 518-522. *See also* Rodrigues, 122:15-123:4: R. 28-5, PageID. 497.

- Job elimination did not constitute "cause" for dismissal. Articles 2-3, 442, 447, 482: R. 28-6, PageID. 510-517; Articles 1-3, 7-9, 12-14, 19-

---

[5] These are its Consolidated Labor Laws ("CLT").

20: R. 28-7, PageID. 518-522. *See also* Rodrigues, 115:2-118:11, 236:4-237:5: R. 28-5, PageID. 495-496.

- Mr. Antunes was deemed to be co-employed by Gerdau S.A. and Gerdau Ameristeel while he worked at Gerdau Ameristeel and by Gerdau S.A. and Gerdau MacSteel while he worked at Gerdau MacSteel. Articles 2-3, 442-443, 447: R. 28-6, PageID. 510-517; Brazil Law 7064/December 6, 1982, Articles 1-3, 9, 12-14, 19-20, as amended by Brazil Law No. 11,962/July 3, 2009: R. 28-7, PageID. 518-522. *See also* Rodrigues, 8:11-19:23, 81:21-115:1, 118:12-122:6: R. 28-5, PageID. 482-497.

- Gerdau Ameristeel and Gerdau MacSteel as applicable were jointly and severally obligated with Gerdau S.A. to guarantee, fund, and provide social security, severance, vacation, advance notice of employment termination, relocation and return, and other benefits for Mr. Antunes and his family while he was employed as a Brazilian expatriate at each of these Gerdau S.A. controlled entities. *See* Articles 2-3, 442-443, 447: R. 28-6, PageID. 510-517; Articles 1-3, 7-9, 12-14, 19-20: R. 28-7, PageID. 518-522; Title II, Art. 7, Sections I-III, VIII, XXI: R. 28-8, PageID. 523-544; Brazil Law No. 8,036/May 11, 1990: R. 28-10, PageID. 550-561; Brazil Law No. 12,506/October 11, 2011: R. 28-11,

PageID. 572-573. *See also* Rodrigues, 81:21-115:1: R. 28-5, PageID.486-495.

- These rights and entitlements were deemed to be inalienable terms and conditions of Mr. Antunes's employment relationships and "tacit" employment contracts with Gerdau S.A., Gerdau Ameristeel, and Gerdau MacSteel.  Articles 2-3, 442-443, 447: R. 28-6, PageID. 510-517; Articles 1-3, 7-9, 12-14, 19-20: R. 28-7, PageID. 518-522; Title II, Art. 7, Sections I-III, VIII, XXI: R. 28-8, PageID. 523-544.

- Gerdau Ameristeel and Gerdau MacSteel as applicable were jointly and severally obligated with Gerdau S.A. to respect and guarantee that these rights and entitlements of Mr. Antunes were protected while he was employed at each of these Gerdau S.A. controlled entities.  Articles 2-3, 442-443, 447: R. 28-6, PageID. 510-517; Articles 1-3, 7-9, 12-14, 19-20: R. 28-7, PageID. 518-522. *See also* Rodrigues, 81:21-118:11, 236:4-237:5: R. 28-5, PageID.486-495, 505.

- The rights and entitlements under the Constitution and labor laws of Brazil and U.S. and Michigan statutes and common law applied to Mr. Antunes as a Brazilian expatriate who had been co-employed by Gerdau S.A., Gerdau Ameristeel, and Gerdau MacSteel and were terms and conditions of his employment by these entities. *See* Articles 2-3,

442-443, 447: R. 28-6, PageID. 510-517; Articles 1-3, 7-9, 12-14, 19-20: R. 28-7, PageID. 518-522. *See also* Rodrigues, 81:21-118:11, 236:4-237:5: R. 28-5, PageID.486-495, 505.

The Brazil Legislature enacted a labor law reform on July 13, 2017, which was effective, November 1, 2017, that allows a Brazilian employer and a Brazilian expatriate employee working at one of its foreign subsidiaries to mutually agree to terminate the employment relationship with the Brazilian employer. Article 484-A, added by Law No. 13467/July 13, 2017: R. 28-6, PageID. 514. However, the law did not apply retroactively, and Mr. Antunes never executed such an agreement with Gerdau S.A. or Gerdau MacSteel[6]. Antunes, 182:1-192:1: R. 28-3, PageID. 372-374; Antunes Affidavit, ¶¶2-6: R.28-12, PageID. 576-577.

### B. Mr. Antunes's MacSteel Job Duties and Experience

---

[6] Gerdau S.A. and Gerdau MacSteel purported to unilaterally terminate Mr. Antunes's employment relationship with Gerdau S.A. without cause, effective April 1, 2014. This action was invalid because: (**1**) it occurred in conjunction with an illegal "localization" process by which Gerdau S.A. and Gerdau MacSteel sought to avoid these entities' continuing obligations to guarantee, fund, and provide the benefits for which Mr. Antunes was eligible as a Brazilian expatriate employed at Gerdau MacSteel and (**2**) it was not effectuated in conformity with the requirements of the then applicable labor laws of Brazil. *Compare* Antunes, 182:1-192:1 and referenced Ex. 6-8: R.28-3, PageID. 372-374; Antunes Affidavit, ¶¶1-13: R. 28-12, PageID.5765-579 with Articles 2-3, 442-443, 447: R. 28-6, PageID. 510-517; Articles 1-3, 7-9, 12-14, 19-20: R. 28-7, PageID. 518-522; Title II, Article 6, section XXI, Art. 7, Sections I-III, VIII, XXI, Art. 18-20: R. 28-8, PageID. 523-544.

The Gerdau MacSteel Accounting Manager job description in effect when Mr. Antunes was employed by the company did not disclose all of the job duties and responsibilities that Mr. Antunes exercised when he was employed in that capacity. These were much more extensive as delineated in his Affidavit. *See* Antunes Affidavit, ¶¶ 4-9, 11, and 13 and **Exhibits A - C**: R. 36-1, PageID. 1365-1372, 1398-1410; Antunes, 70:3-115:16: R. 36-2, PageID. 1500-1511; Karmol [7] , 20:19-38:8, 49:10-62:20 and referenced exhibits 40-41, 43: R. 36-3, PageID. 1523-1528, 1530-1533; Marcucci, 59:21-81:4; 90:1-98:15, 113:9-118:5 and referenced exhibits 23-25: R. 36-4, PageID. 1538-1543, 1546-1548, 1551-1553. Gerdau S.A., Gerdau Ameristeel, and Gerdau MacSteel higher management had identified Mr. Antunes as the chief financial officer for Gerdau MacSteel since December, 2015, when Mr. Karmol retired, because of his extensive duties and responsibilities including many of those assumed by him when Mr. Karmol retired. *Id.* Mr. Antunes received annual performance evaluations throughout his Gerdau MacSteel employment and since December, 2015, in particular, evincing that he effectively performed the duties and responsibilities of his position.

### C. Discrimination With Respect to Pay and Promotion Opportunities That Adversely Affected Mr. Antunes

---

[7] Mr. Karmol was Mr. Antunes's manager until December, 2015, when he retired.

Ms. Donna Blackwell is a female U.S. citizen who commenced employment with Gerdau MacSteel at the Monroe mill on February 3, 2014, as a Plant Controller or Plant Controller II. *See* Antunes Affidavit, ¶ 10: R. 36-1, PageID. 1369. Although the duties and responsibilities of Mr. Antunes's Accounting Manger position had been much more extensive than the duties and responsibilities that had been associated with the positions held by Ms. Blackwell since February 3, 2014[8] and he had functioned as the chief financial officer for Gerdau MacSteel since December, 2015, Mr. Antunes received substantially less annual salary than she received during the period between February 3, 2014, and December 6, 2019, when his employment was terminated. *See* Antunes Affidavit, ¶ ¶ 4-17 and **Exhibits A** to **E**: R. 36-1, PageID.1365-1374, 1398-1420; Blackwell, 15:20-27:14: R. 36-5, PageID.1556-1559.

Ms. Blackwell's annual salary for 2016 was $149,148 while Mr. Antunes's 2016 annual salary was $130, 378; her annual salary for 2017 initially was $156,900

---

[8] Mr. Karmol confirmed that the work performed by Mr. Antunes as Gerdau MacSteel's Accounting Manager, like the work Mr. Karmol previously performed as its Vice President and Controller, was at least equal to the work Ms. Blackwell performed as Plant Controller II and later as Regional Controller, her job required no more skill, effort, and responsibility than those associated with Mr. Antunes's job, and their jobs were performed under similar working condition. *See* Karmol, 20:19-38:8, 49:10-62:20: R. 36-3, PageID. 1523-1528, 1530-1533; Antunes Affidavit, ¶¶ 4-9, 11, and 13 and **Exhibits A- C**: R. 36-1, PageID.1365-1372, 1398-1410; Antunes, 34:14-16, 70:3-71:2, 75:10-115:16: R. 36-2, PageID. 1491, 1500-1511.

and later increased to $160,000 while his 2017 annual salary was $131,433; her annual salary was between $160,000 and $174,000 in 2018 while Mr. Antunes's 2018 annual salary was $133,590; and her annual salary was $174,000 in 2019 while his 2019 annual salary was $140,000. *See* Antunes Affidavit, ¶ ¶ 12-17: R. 36-1, PageID. 1370-1374; Blackwell, 15:20-27:14: R. 36-6, PageID.1556-1559; Boucher, 59:20-74:11, 86:11-88:11, 89:3-97:4, 100:22-105:8 and exhibits 31-34: R. 36-6, PageID. 1563-1567, 1570-1574. These compensation differences pertained although they had the same Pay Grade 22 through at least August, 2017; Mr. Antunes had been employed much longer than Ms. Blackwell at Gerdau MacSteel; and his duties and responsibilities as Accounting Manager exceeded those associated with her Plant Controller or Plant Controller II and Regional Controller positions. *Id. See* Antunes Affidavit, ¶¶ 4-17 and **Exhibits A-E**: R. 36-1, PageID. 1365-1374, 1398-1420; Blackwell, 15:20-27:14: R. 36-5, PageID.1556-1559.

Ms. Blackwell also received annual salary increases during 2017 and later when she became a Regional Controller in excess of the annual salary range for Pay Grade 22 ostensibly because she had assumed additional responsibilities[9]. However,

---

[9] According to Ms. Boucher, a Gerdau MacSteel human resources manager, Ms. Blackwell's duties and responsibilities did not change when she became a Regional Controller. Her *location specific* financial accounting, analysis, and reporting responsibilities for Gerdau MacSteel remained the same, but included the Monroe

Mr. Antunes was not accorded the same treatment when he assumed additional responsibilities between 2014 and December 6, 2019.  *See* Antunes Affidavit, ¶¶ 11-17 and **Exhibits A-E**: R. 36-1, PageID. 1369-1374, 1398-1420; Blackwell, 15:20-27:14: R. 36-5, PageID.1556-1559; Boucher, 59:20-74:11, 86:11-88:11, 89:3-97-4, 100:22-105:8 and exhibits 31-34: R. 36-6, PageID. 1563-1567, 1570-1574.  Mr. Antunes was told by Messrs. Karmol and Marcucci at various times that he was not entitled to be treated the same as Ms. Blackwell and others like Mr. Hinojosa[10] with respect to opportunities for promotions and salary increases because they decided that any decisions pertaining to these matters had to be made by Gerdau S.A. because he was a Brazilian expatriate.  *See* Antunes Affidavit, ¶ 16: R. 36-1, PageID. 1373.

### D. **The Operations Strategic Controller Position**

On or about August 27, 2019, a Gerdau MacSteel Operations Strategic Controller ("OSC") position was posted on company and other websites and the company began to accept applications for the position from Gerdau MacSteel employees and other candidates. *See* Antunes Affidavit, ¶ 18 and attached **Exhibit F**: R. 36-1, PageID. 1374, 1421-1424**;** Antunes, 133:16-143:3: R. 36-2, PageID. 1515-1518.  Mr. Antunes became very concerned when he read the job description for the

---

mill and two other smaller operations. Boucher, 59:20-74:11, 86:11-88:11, 89:3-97-4, 100:22-105:8: R. 36-6, PageID. 1563-1567, 1570-1574.

[10] Mr. Hinojosa is a U.S. citizen.

OSC position that his MacSteel employment was in jeopardy because most of the listed duties and responsibilities of the position were those that he had been performing as Gerdau Macsteel's Accounting Manager. He also was qualified to perform any additional duties and responsibilities that were listed for the OSC position that he had not already been performing in his role as Accounting Manager because of his education, background and work experience[11]. *See* Antunes Affidavit ¶ 19: R. 36-1, PageID. 1374; Antunes, 115:17-149:25: R. 36-2, PageID. 1511-1519.

Mr. Antunes compared his education, background, experience, and the duties and responsibilities he exercised in his role as Gerdau MacSteel's Accounting Manager to the qualifications, duties, and responsibilities listed for the OSC position. He determined that the OSC position was his job but with a different title and that he satisfied all of the listed requirements of the role. *See* Antunes Affidavit, ¶¶ 19-21: R.36-1, PageID. 1374-1387; Antunes, 115:17-149:25: R. 36-2, PageID. 1511-1519.

Despite his fear that he would be applying for his own job with a different title, Mr. Antunes submitted his resume and a letter expressing interest in the OSC

---

[11] Mr. Karmol confirmed how Mr. Antunes's duties and responsibilities increased throughout the period between June 1, 2008, and December, 2015, and that both Mr. Karmol and Mr. Antunes by implication were qualified for the OSC position since they had similar education, background, and experience. Karmol, 20:19-38:8, 49:10-62:20: R. 36-3, PageID. 1523-1528, 1530-1533.  *See also* Antunes Affidavit, ¶¶ 4-9, 11, and 13 and **Exhibits A- C**: R. 36-1, PageID. 1365-1372, 1398-1410; Antunes, 34:14-16, 70:3-71:2, 75:10-115:16: R. 36-2, PageID. 1491, 500-1511.

position to the responsible Gerdau representative.  He was later notified that an interview of him for the position by Messrs. Rodrigo Belloc and Andre Rodrigues had been scheduled to occur on November 25, 2019. *See* Antunes Affidavit, ¶ 22: R.36-1, PageID. 1387. *See also* Antunes, 115:17-149:25: R. 36-2, PageID. 1511-1519.

Gerdau MacSteel candidates ostensibly were to have been given priority consideration for the OSC position. External candidates were to have been considered for the position only if it had been determined that there were no qualified internal candidates. *See* Antunes Affidavit ¶ 23 and August 26, 2019 email attached as **Exhibit G**: R. 36-1, PageID. 1387-1388, 1425-1426; Rodrigues**,** 136:9-139:14: R. 36-7, PageID. 1579-1580.   However, Messrs. Belloc and Rodrigues accepted applications from and interviewed external candidates before any determination had been made about whether there were qualified internal candidates for the OSC position. *Id*. *See* Antunes Affidavit, ¶ 23 and attached **Exhibits F** and **H**: R. 36-1, PageID. 1387-1388, 1421-1432; Campomizzi, 6:5-12:24, 28:15-39:16: R. 36-8, PageID. 1585-1586, 1590-1593.

Emails forwarded to Messrs. Antunes and Brandt Hinojosa by Gerdau S.A. representatives during October, 2019, and again on November 14, 2019, disclose that Mr. Belloc had already decided to hire a younger Gerdau S.A. employee for the OSC position, Mr. Felipe Campomizzi, a 30-year-old Brazilian citizen who resided in Brazil, because Gerdau MacSteel had included costs associated with the hiring of

an expatriate for the position in its 2020 budget. *See* Antunes Affidavit, ¶ 24 and attached **Exhibit I**: R. 36-1, PageID. 1388, 1432-1439; Hinojosa Dep., pp. 87:2-90:6: R. 36-9, PageID. 1596-1597.

Mr. Antunes and Mr. Hinojosa were told by Mr. Rodrigues several days before their scheduled interviews by Messrs. Belloc and Rodrigues concerning the OSC position that it was part of age-related succession "pipeline" process implemented by Gerdau S.A. The successful candidate for the OSC position was to work at Gerdau MacSteel in this capacity for 2 to 5 years to prepare him to the succeed the financial leader at Gerdau Ameristeel in Tampa, Florida, who was to succeed the then current Gerdau S. A. Chief Financial Officer ("CFO"), who as a matter of Gerdau S.A. policy was required to retire no later than when he became age 60.  The OSC would then be in the "pipeline" to become the Gerdau S.A. CFO when the former Gerdau Ameristeel financial leader was required to retire as the Gerdau S.A. CFO no later than when he became age 60[12]. *See* Antunes Affidavit, ¶ 25: R. 36-1, PageID. 1388; Antunes, 131:10-133: R. 36-2, PageID. 1515; Hinojosa, 108:11-110:12: R. 36-9, PageID. 1601-1602.

---

[12] Mr. Antunes had concluded based on what Mr. Rodrigues told him and the circumstances described above that he was ineligible for the OSC position because he will be at the Gerdau S.A. mandatory retirement age of 60 or very close to it when the Gerdau S. A. Chief Financial Officer position will become available at the end of the age-based succession "pipeline". *See* Antunes Affidavit, ¶ 26: R. 36-1, PageID. 1389.

Mr. Campomizzi ostensibly applied for the OSC position on November 22, 2019, the deadline for submission of applications. He was 30 years old at the time. He purportedly applied for the OSC position although he did not satisfy the minimum requirements for the position: 10 years of progressive financial experience in a manufacturing organization and a Bachelor's Degree in Accounting or Finance and/or CPA. He also lacked the background, education, and experience required to perform most of the job duties and responsibilities listed for the position. Despite this, Messrs. Belloc and Rodrigues included Mr. Campomizzi as one of the candidates who would be interviewed for the OSC position. His interview was scheduled for November 26, 2019. *See* Campomizzi, 6:5-39:16: R. 36-8, PageID. 1585—1593; Antunes Affidavit ¶¶ 18, 27 and attached **Exhibit F**: R. 36-1, PageID. 1374, 1389-1390, 1421-1424; Antunes, 142:23-143:3: R. 36-2, PageID. 1518 and pp. 19-24, *infra*.

Mr. Antunes met with Messrs. Belloc and Rodrigues for what was a sham OSC position interview of him by them on November 25, 2019. The interview had been scheduled for 30 minutes, but it only lasted about 15 minutes. *See* Antunes Affidavit, ¶ 28 and **Exhibit J**: R. 36-1, PageID. 1390, 1440-1441; Antunes, 145:12-148:12: R. 36-2, PageID. 1518-1519. Mr. Antunes exhibited nervousness and was quite upset throughout his interview because he feared that his MacSteel employment would soon be terminated. His fears were justified. Neither Mr. Belloc

nor Mr. Rodrigues questioned Mr. Antunes about his education, background, and experience, the duties and responsibilities he had been performing as Gerdau MacSteel's Accounting Manager, or the qualifications, duties, and responsibilities listed for the OSC position during the sham interview[13]. Because of this, Mr. Antunes attempted to outline how his duties and responsibilities had changed since June 1, 2008, and displayed a schematic to demonstrate this, but Messrs. Belloc and Rodrigues showed no interest in what he was trying to communicate. Mr. Antunes then reacted to their display of disinterest in him by asking Mr. Belloc if he was going to "fire" him. Mr. Belloc lied and told him "No" although he had previously decided to terminate Mr. Antunes's employment and replace him with Mr. Campomizzi. *See* Antunes Affidavit, ¶ 29 and **Exhibit B**: R. 36-1, PageID. 1390-1391,1404-1406; Antunes, 145:12-148:12: R. 36-2, PageID. 1518-1519.

In this regard, Mr. Belloc's notes pertaining to his interviews of the candidates for the OSC position disclose consistent with the intent of the age-based "pipeline" that Mr. Belloc inquired about and recorded the ages of Mr. Campomizzi and other candidates who were interviewed. Mr. Belloc recorded in his notes that Mr.

---

[13] The fact that Mr. Belloc and Mr. Rodrigues made no effort at any time before the meeting to determine the scope of the duties and responsibilities Mr. Antunes had been performing as Gerdau MacSteel's Accounting Manager and that the meeting was scheduled to last no more than 30 minutes only reinforced his fears and anxiety about what they had intended. *See* Antunes Affidavit ¶ 28 and **Exhibit J**: R. 36-1, PageID. 1390, 1440-1441; Antunes, 145:12-148:12: R. 36-2, PageID. 1518-1519.

Campomizzi was "30 years old! [14]" *See* Antunes Affidavit, ¶ ¶ 30-31 and **Exhibit K**:

R. 36-1, PageID. 1391, 1442-1448.

Moreover, email exchanges and other communications that Mr. Belloc had

with the Gerdau S.A. Chief Executive Officer, Gustavo Wernek de Cunha, before

and on December 9, 2019, disclose that Mr. Campomizzi had been selected by Mr.

Belloc for the OSC position and to replace Mr. Antunes even before he had been

interviewed by Messrs. Belloc and Rodrigues. It is evident that Messrs. Wernek and

Belloc conferred about the selection of Mr. Campomizzi for the OSC position before

and on December 9, 2019, because the December 9, 2019 email exchange was a

follow-up to earlier communications between Mr. Belloc to Mr. Wernek about the

selection of Mr. Campomizzi for the OSC position, "[j]ust returning with the subject

of GSN's Controller[15]," and he referred to Mr. Campomizzi using his first name,

Felipe. Mr. Belloc also acknowledged in the email that he had previously consulted

with Mr. Scardoelli, the incumbent in the Gerdau S.A. CFO position at the end of

the age-based "pipeline", about his decision to select Mr. Campomizzi for the OSC

---

[14] Mr. Belloc's notes also evince that Messrs. Belloc and Rodrigues's interviews of the Gerdau MacSteel internal candidates, Mr. Antunes, Ms. Blackwell, and Mr. Hinojosa, each of whom was older than age 50 at the time, were very abbreviated, did not include questions related to their abilities to perform the duties and responsibilities listed in the OSC job description, and that Ms. Blackwell was asked age-related questions about her grandchildren. *See* Antunes Affidavit, ¶ 31 and **Exhibit K**: R. 36-1, PageID.1391-1392, 1442-1448.

[15] GSN is a reference to Gerdau MacSteel

position. *See* Antunes Affidavit, ¶ 37 and **Exhibit O**: R. 36-1, PageID. 1395, 1464-1467.

### E.     Mr. Antunes's Gerdau MacSteel Employment Termination

Mr. Antunes was told on December 6, 2019, that he had not been selected for the OSC position and that his employment had been terminated, effective that day, ostensibly because his job had been eliminated[16]. *See* Antunes Affidavit, ¶ 32: R. 36-1, PageID. 1392. Mr. Antunes's was not selected for the OSC position because of his age and although he was the most qualified candidate for it; Mr. Campomizzi was selected for the OSC position and as Mr. Antunes's replacement because of his age and although he did not satisfy the minimum requirements and otherwise lacked the background, education, and experience needed to perform the duties and responsibilities of the OSC and Mr. Antunes's positions; and Mr. Antunes's Gerdau MacSteel employment was terminated because of his age although he was qualified for a Gerdau MacSteel Plant Accountant position for which the company was seeking

---

[16] Mr. Antunes was the only Gerdau MacSteel employee at the Jackson, Michigan offices where he was located whose job ostensibly was eliminated and who had his employment terminated. Mr. Antunes's job actually was not eliminated because the OSC position for which Mr. Campomizzi had been selected was his job with a different title. There also were no cost savings related to the purported elimination of Mr. Antunes's job because Mr. Belloc had created at least two higher paying positions in advance of his employment termination: the OSC position for which Mr. Antunes had been rejected and a position created for Mr. Daniel Mussap. *See* Antunes Affidavit, ¶ 33: R. 36-1, PageID. 1392 and Boucher, 105: 6-111:19: R. 36-6, PageID. 1574-1576.

applicants at the time, which was later filled by a younger, female U.S. citizen who was not of Brazilian national origin. *See* Antunes Affidavit, ¶ 32: R. 36-1, PageID. 1392; Blackwell, 63:3-65:4: R. 36-5, PageID. 1560; Boucher, 124:8-125:25: R. 36-6, PageID. 1575. It is undisputed that neither Gerdau S.A. nor Gerdau MacSteel tendered to Mr. Antunes the benefits to which he was entitled under the Constitution and Labor laws of Brazil upon or after the termination of his employment[17].

**F.    Belloc's Efforts to Cover-up His Discriminatory Treatment of Mr. Antunes**
**1.    The OSC Position**

Mr. Belloc lied when he testified during his deposition that the decision to select Mr. Felipe Campomizzi for the OSC position and to replace Mr. Antunes was independently made by the Gerdau MacSteel leadership team without his influence during January, 2020. Mr. Belloc's testimony is contradicted by email exchanges and other communications that he had with Mr. Wernek on and before December 9, 2019 and leadership team records [18]. *See* Antunes Affidavit, ¶¶ 37-39 and **Exhibit O** and **Q**: R. 36-1, PageID. 1395-1397, 1464-1467, 1472-1484**.** Moreover, Mr. Belloc's decision to purportedly involve the Gerdau MacSteel leadership team in the

---

[17] Defendants admitted this in their Answer to Plaintiff's Complaint. R. **9, Page ID. 126-127.**

[18] The email exchanges and records purportedly generated by the Gerdau MacSteel leadership team were deceptively produced in response to Mr. Antunes's discovery requests after Mr. Belloc had already been deposed.

OSC selection process was contrived to provide pretextual justifications for his earlier decisions to reject Mr. Antunes for the OSC position, select Mr. Campomizzi for the OSC position and as Mr. Antunes's replacement, and to terminate Mr. Antunes's employment in reaction to a letter emailed by counsel for Mr. Antunes on his behalf to Mr. Belloc and the Gerdau North America General Counsel on December 18, 2019. The letter gave notice of Mr. Antunes's claims in this action. *See* Antunes Affidavit, ¶ 38 and E**xhibit P**: R. 36-1, PageID. 1395-1396, 1468-1471.

Indeed, Gerdau MacSteel leadership team records disclose that: **(a)** only two of five members of the leadership team, Messrs. Moore and Kelleher, interviewed the candidates, Mr. Campomizzi, Ms. Blackwell and Mr. Brandt Hinojosa, who were referred to the leadership team in January, 2020, by Messrs. Belloc and Rodrigues ostensibly to obtain the leadership team's evaluations of their competencies to serve as the OSC in conjunction with the sham OSC selection process; **(b)** the leadership team was provided a job description that was different than the one applicable to the OSC position for assessment purposes presumably because Mr. Campomizzi lacked the requisite, minimum qualifications for the OSC position and the background, education, and experience required to perform most of the job duties and responsibilities delineated in the actual OSC job description; **(c) t**he leadership team otherwise ignored Mr. Campomizzi's lack of requisite minimum and other qualifications for the OSC position; **(d)**  Mr. Rodrigues had purportedly requested

assessments from all leadership team members pertaining to the suitability of **only** Ms. Blackwell and Mr. Hinajosa, **not** Mr. Campomizzi, for the OSC position; and (**e**) the leadership team was concerned about and attempted to respond to "rumors" that Mr. Campomizzi had previously been selected for the OSC position. *See* Antunes Affidavit, ¶ 39 and **Exhibit Q**: R. 36-1, PageID. 1396-1397, 1472-1484; Campomizzi, 6:5-39:16: R. 36-8, PageID. 1585—1593; Hinojosa, 93: 2-21; Moore,58:1-102:23: R. 36-10, PageID. 1605-1616.

### 2.  Mr. Antunes's Employment Termination

The evidence discloses that Mr. Belloc also lied about the timing of and reasons for the decision to terminate Mr. Antunes's employment. Mr. Moore testified about email exchanges concerning the decision to terminate Mr. Antunes employment. These disclose that the decision was made no later than and likely before November 25, 2019, which was a Monday when weekly afternoon Gerdau MacSteel leadership team meetings concerning operations and human resource related matters regularly occurred and the same day as Mr. Antunes's sham interview for the OSC position.  Mr. Rodrigues participated in the email exchanges and referenced the previously made decision to terminate Mr. Antunes's employment in an email on December 2, 2019, stating "we'll do the Antunes termination this Friday," which was December 6, 2019. *See* Antunes Affidavit, ¶ 34

and **Exhibit L**: R. 36-1, PageID. 1392-1393, 1449-1451**.** *See also* Moore, 102:24-112:21: R. 36-10, PageID. 1616-1618.

Mr. Belloc emailed an announcement about the termination of Mr. Antunes's employment to Gerdau MacSteel representatives on December 6, 2019. He stated that employees who had previously reported to him would report to Mr. Belloc until the OSC position was filled. The notice confirms that Mr. Belloc's intention as of that time was that Mr. Campomizzi was to replace Mr. Antunes and was to assume all of his former duties and responsibilities. *See* Antunes Affidavit, ¶ 36 and **Exhibit M** and **N**: R. 36-1, PageID. 1394-1395, 1452-1463**.** The decision to assign some of Mr. Antunes's former duties and responsibilities to Mr. Hinojosa and employees who had previously reported to him obviously was made sometime later because Mr. Campomizzi lacked the requisite, minimum qualifications for the OSC position and the background, education, and experience required to perform most of the job duties and responsibilities of the OSC position and Mr. Antunes's former job duties and responsibilities. *Id*.; Campomizzi,6:5-39:16: R. 36-8, PageID. 1585-1593.

### SUMMARY OF ARGUMENT

The District Court committed reversible error when it rendered the judgment dismissing each of Mr. Antunes's claims against Defendants with prejudice **[R. 51]**. This conclusion ensues because its Opinion and Order **[R. 50]** manifests that it erroneously:

(A) misapplied apposite principles of law when it struck and declined to consider most of the evidence detailed in and exhibits attached to Mr. Antunes Affidavit, which in addition to the other evidence in the record is probative of and discloses that genuine issues of material fact remain with respect to each of his claims, and

(B) misapplied apposite principles of substantive law, weighed conflicting evidence in the record, and made findings of fact and credibility determinations in favor of Defendants, instead of evaluating the evidence in the record and inferences permissibly drawn from the evidence in a light most favorable to Mr. Antunes in the manner required by Fed. R. Civ. P. 56, when it denied his motion for partial summary judgment with respect to his claims for breach of an employment contract and granted Defendants' motion for summary judgment with respect to each of his claims.

As in *Wexler v. White's Fine Furniture*, 317 F.3d 564, 578(6th Cir. 2003) (en banc), Defendants' arguments in support of their motion for summary judgment disclosed no more than "conflicting proof and inferences that can be drawn therefrom which raise genuine issues of material fact that preclude summary judgment" with respect to Mr. Antunes's claims. *See also White v. Baxter Healthcare*, 533 F.3d 381, 390-395 (6th Cir. 2008). Accordingly, for these reasons as further discussed below, this Court should reverse the Opinion and Order **[R.50]**

and Judgment **[R.51]** of the District Court and remand this case back to it for a trial on the merits of these claims.

## STANDARD OF REVIEW

This Court reviews a District Court's grant of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 *de novo. Wexler v. While's Fine Furniture, Inc*., 317 F.3d 564, 569-570 (6ᵗʰ Cir. 2003) (en banc), citing *Holloway v. Brush,* 220 F.3d 767, 772 (6th Cir. 2000) (en banc). Under Fed. R. Civ. P. 56, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id;* Fed. R. Civ. P. 56(a). The moving party has the burden of proving the absence of a genuine issue of material fact and its entitlement to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists if a reasonable jury—viewing the evidence in favor of the nonmovant—could decide for the nonmovant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52 .

Accordingly, the Court should examine the evidence in the entire record and draw all reasonable inferences in the light most favorable to Mr. Antunes when it considers Defendants' motion for summary judgment. *Ricci v. DeStefano*, 557 U.S.

557, 586 (2009*); Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*(" *Matsushita*")*,* 475 U.S. 574, 587 (1986). All genuinely disputed facts must be resolved in his favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court should not weigh conflicting evidence or make findings of fact or credibility determinations when deciding the motion because these are functions for a jury. *Id. See also Briggs v. Potter*, 463 F.3d 507, 513 (6th Cir. 2006); *Sharp v. Aker Plant Servs. Grp., Inc.,* 726 F.3d 789, 796 (6th Cir. 2013). Instead, Mr. Antunes's "evidence 'is to be believed, and all justifiable inferences are to be drawn in [his] favor'" when the Court rules on the motion. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## ARGUMENT

### A. The District Court Committed Reversible Error When It Struck and Declined to Consider Most of the Evidence Detailed in and Exhibits Attached to Mr. Antunes's Affidavit

The District Court committed reversible when it struck and declined to consider most of the evidence detailed in and exhibits attached to Mr. Antunes's Affidavit. This conclusion ensues for at least two reasons:

**First,** the evidence detailed in and exhibits attached to Mr. Antunes's Affidavit permissibly supplement the record, do not contradict his deposition testimony, and do not constitute an attempt to create a sham fact issue for trial. *See Ariel, S.R. L. v. PCC Airfoils, LLC*, 448 F.3d 899, 908-910 (6th Cir. 2006). The Court in *Ariel, S. R. L.* found that the district court erred when it struck portions

of an affidavit at issue in the case because it did not directly contradict the affiant's deposition testimony, "but rather revealed information that was not fully explored during that testimony." *Id.* at 909.

These are the circumstances that pertain in this case. Defendants did not demonstrate that each of the statements and evidence detailed in paragraphs 1-39 and exhibits A-Q of Mr. Antunes's Affidavit contradict his deposition testimony with respect to the applicable subject matter. *See* R. 36-1. Indeed, the exhibits consist of Defendants' business records which were deceptively produced on a sequential basis during discovery in some instances after the witness with knowledge of the record had already been deposed[19]. *Id.*

**Second,** the evidence submitted in opposition to a motion for summary judgment need not be in a form that would be admissible at a trial. *Celotex Corp.,* 477 U.S. at 324; *Fraser v. Goodale,* 342 F.3d 1032, 1036 (9th Cir.2003), *cert. denied,* 541 U.S. 937 (2004). Instead, the majority of circuits interpret *Celotex* to permit consideration of evidence submitted in non-admissible form in opposition to a motion for summary judgment if the evidence "will be reduced to admissible form at trial." *McMillian v. Johnson,* 88 F.3d 1573, 1584 (11th Cir.1996); *Gleklen v. Democratic Cong. Campaign Comm., Inc.,* 199 F.3d 1365, 1369 (D.C.Cir.2000); *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.,* 909 F.2d

---

[19] *See* n. 18, *supra.*

1524, 1542 (3rd Cir.1990), *cert. denied,* 499 U.S. 921, 111 S. Ct. 1313, 113

L.Ed.2d 246 (1991). The evidence detailed in and exhibits attached to Mr.

Antunes's Affidavit will be presented in admissible for at a trial in this matter.

### B. Genuine Issues of Material Fact Remain with Respect to Plaintiff's Claims for Discrimination and Interference with Protected Rights in Violation of the ELCRA and 42 U.S.C. § 1981 [20]

Section 202 of the ELCRA provides in pertinent part that an employer shall

not do any of the following:

> Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

MCLA §37.2202. Section 206 of the Act prohibits employers from making written

and oral inquiries about a person's protected characteristics i.e., age, and using that

information when it makes employment related decisions. M.C.L.A. § 37.2206(2).

Claims for discrimination on account of age, national origin, and sex and

interference with protected rights in violation of the ELCRA may be proven by either

direct or circumstantial evidence. *Sniecinski v. Blue Cross & Blue Shield of*

---

[20] 42 U.S.C. § 1981 prohibits discrimination based on alienage or citizenship status. *Anderson v. Conboy*, 156 F.3d 167 (2nd Cir. 1998), *cert granted, sub nom. Carpenters v. Anderson,* 119 S. Ct. 1495, *cert. dismissed*, 119 S.Ct.2418 (June 24, 1999). The burden of proof applicable to claims for violations of section 1981 is similar to that applicable to claims for violation of the ELCRA. *See Johnson v. University of Cincinnati*, 215 F.3d 561, 572-573, 573 n.5,574-575 (6th Cir. 2000).

*Michigan*, 469 Mich. 124, 133, 666 N.W.2d 186 (2003); *Hazle v Ford Motor Co,* 464 Mich. 456, 462; 628 N.W.2d 515 (2001). These methods of proof are mutually exclusive: a plaintiff need only demonstrate unlawful discrimination under either method, not both. *Id. See also DeBrow v. Century 21 Great Lakes, Inc,* (After remand), 463 Mich. 534, 537-39; 620 N.W. 2d 836 (2001).

The burden-shifting framework articulated in *McDonnell Douglas v. Green,* 411 U.S. 792 (1973), is employed when the plaintiff's claims are based on circumstantial evidence. *Id.* The plaintiff claiming discrimination in violation of the ELCRA must show only that a protected characteristic was a motivating factor that made a difference in the employer's decision. *See Hazle* 464 Mich. at 462; 628 N.W. 2d 515.

### 1. Direct Evidence

The Michigan Supreme Court has defined direct evidence as "evidence which, if believed, requires the conclusion that unlawful discrimination was ***at least a motivating factor*** in the employer's actions." *See Sniecinski,* 469 Mich. at 132-133; 666 N.W. 2d 186 (emphasis supplied), citing *Hazle,* 464 Mich. at 462; 628 N.W.2d 515, quoting *Jacklyn v. Schering-Plough Healthcare Products Sales Corp*, 176 F.3d 921, 926 (6th Cir. 1999). However, there is no exhaustive list of what is deemed to be direct evidence of discrimination. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S. Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality opinion) *Trans World*

*Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S. Ct. 613, 83 L.Ed.2d 523 (1985).

This should be determined on a case-by-case basis. *Id.*

"[D]irect evidence of discrimination does not require 'a virtual admission of illegality.'" *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044 (7th Cir. 1999), quoting *Venters v. City of Delphi*, 123 F.3d 956, 973 (7th Cir. 1997). "It would cripple enforcement of the employment discrimination laws to insist that direct evidence take the form of an employer's statement to the effect that 'I'm firing you because you're in a protected group.'" *Sheehan,* 173 F.3d at 1044. A plaintiff may prove intentional discrimination with other forms of direct evidence demonstrating that the "decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Price Waterhouse v. Hopkins*, 490 U.S. at 277 (O'Connor, J., concurring).

Direct evidence of discrimination is "evidence which in and of itself suggests that the person or persons with the power to hire, fire, promote and demote the plaintiff were animated by an illegal employment criterion." *Venters*, 123 F.3d at 972. It includes "any statement or document which shows on its face that an improper criterion served as a basis — not necessarily the sole basis, but *a* basis — for the adverse employment action." *Fabela v. Socorro Independent School Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (Emphasis in original). This is consistent with M.C.L.A. §37. 2206 (2) (a)-(c) and Michigan and Sixth Circuit precedent pertaining to what constitutes

direct evidence that unlawful discrimination was at least a motivating factor in an employer's decision to take adverse action against the plaintiff. *See* M.C.L.A. 37. 2206 (2) (a)-(c); *Matras v. Amoco Oil Co.,* 424 Mich. 675, 385 N.W.2d 586 (1986) (reversing court of appeals decision to set aside verdict in favor of the plaintiff in an age discrimination case because of discriminatory criteria included as part of a reduction in force evaluation process); *Wexler,* 317 F.3d at 570-572, citing *Weberg v. Franks,* 229 F.3d 514, 523-26 (6th Cir. 2000) (holding that a supervisor's inclusion of a reference to the race of the plaintiff in a disciplinary report created a genuine issue of material fact regarding the employer's intent, even though the supervisor also stated in his deposition that he would have made the same employment decision irrespective of her race). *See also Venters*, 123 F.3d at 973 ("Still, remarks and other evidence that reflect a propensity by the decisionmaker to evaluate employees based on illegal criteria will suffice as direct evidence of discrimination even if the evidence stops short of a virtual admission of illegality"); *Sheehan,* 173 F.3d at 1044-1045 (same).

"Proof of this nature supports the inference that a statutorily proscribed factor — race, sex, age, or in this case, [age, sex, and national origin] — was at least a motivating factor in the adverse employment action at issue." *Venters*, 123 F.3d at 973. When a plaintiff produces direct evidence of discrimination in violation of the ELCRA, the burden of proof shifts to the defendant to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible

motive, and the case ordinarily should be submitted to a jury for a determination about whether the plaintiff's claims are true. *Sniecinski, 469 Mich. at 133*; *DeBrow,*463 Mich. at 537-39; 620 N.W.2d 836 (2001); *Graham v Ford,* 237 Mich. App. 670, 676-677; 604 N.W.2d 713 (1999).

### a. Mr. Antunes has produced direct evidence that his age was a motivating factor in the decision to reject him for the OSC position and concomitantly terminate his employment

Mr. Belloc's notes about the ages of candidates he interviewed for the OSC position and testimony pertaining to the age-based "pipeline" constitute direct evidence that Mr. Antunes and Mr. Campomizzi's ages were a motivating factor in the decisions to reject Mr. Antunes for the OSC position, to select Mr. Campomizzi for the OSC position and as Mr. Antunes's replacement, and to concomitantly terminate Mr. Antunes's employment. *See* M.C.L.A. §37. 2206 (2) (a)-(c); *Matras,* 424 Mich. 675, 385 N.W.2d 586; *Weberg,* 229 F.3d 514, 523-26; *Fabela* 329 F.3d at 415 (5th Cir. 2003). Evidence that Mr. Campomizzi had been pre-selected for the OSC position and to replace Mr. Antunes although he lacked the minimum requirements for the OSC position and the background, education, and experience required to perform most of the job duties and responsibilities listed for the OSC position and associated with Mr. Antunes former position further confirms this. Moreover, in accordance with the "Cat's Paw" doctrine, Mr. Belloc's age-based animus and preference for Mr. Campomizzi because of his youth should be imputed

to the Gerdau MacSteel leadership team even had they actually approved the selection of Mr. Campomizzi for the OSC position. *Staub v. Proctor Hospital,* 562 U.S. 411, 419 (2011); *DeNoma v. Hamilton Cty. Ct. of Common Pleas*, 626 Fed. Appx. 101, 110 (6th Cir. 2015); *Chattman v. Toho Tenax Am., Inc*., 686 F.3d 339, 350–51 (6th Cir. 2012). Accordingly, for these reasons, the District Court committed reversible error when it held that no genuine issues of material fact remain and granted Defendants' motion for summary judgment with respect to these claims.

**b. Mr. Antunes has produced direct evidence of discrimination based on alienage or citizenship in violation of 42 U.S.C. § 1981 and national origin in violation of the ELCRA with respect to his eligibility for pay increases and promotions**

Messrs. Karmol's and Marcucci's statements that Mr. Antunes was not entitled to be treated the same as Ms. Blackwell and others like Mr. Hinojosa with respect to promotion eligibility and salary increases because they decided that any decisions pertaining to these matters had to be made by Gerdau S.A. due to his status a Brazilian expatriate are direct evidence of discrimination against Mr. Antunes's based on alienage or Brazilian citizenship in violation of 42 U.S.C. § 1981 and Brazilian national origin in violation of the ELCRA. Accordingly, for this reason, the District Court committed reversible error when it held that no genuine issues of

material fact remain and it granted Defendants' motion for summary judgment with respect to these claims.

2.      **Circumstantial Evidence**

a.      **Mr. Antunes has produced circumstantial evidence that his age was a motivating factor in the decisions to reject him for the OSC position and concomitantly terminate his employment**

i.  **Prima facie case**

The evidence in the record is sufficient to demonstrate or, at a minimum, evinces that genuine issues of material fact remain with respect to pri*ma facie* cases of disparate treatment age discrimination against Mr. Antunes with respect to the decisions to reject Mr. Antunes for the OSC position, select Mr. Campomizzi for the OSC position and as Mr. Antunes's replacement, and concomitantly terminate Mr. Antunes's employment were made[21]. This conclusion ensues because it discloses that Mr. Antunes was age 51 when these decisions adverse to him were made, he was qualified for the OSC and his former positions, and the adverse employment actions affecting him occurred under circumstances giving rise to an inference of unlawful discrimination, i.e., Mr. Belloc's notes containing the ages of candidates he interviewed for the OSC position, testimony pertaining to the age-based "pipeline", and evidence that the  OSC position was Mr.

---

[21] *Compare Pierson v. Quad/Graphics,* 749 F,3d 530, 537-539 (6th Cir. 2014).

Antunes' job with a different title, that Mr. Antunes's was the most qualified candidate for the OSC position, that the decision to terminate Mr. Antunes's employment was made before his November 25, 2019 sham interview, and that Mr. Campomizzi had been pre-selected for the OSC position and to replace Mr. Antunes although he lacked the minimum requirements for the OSC position and the background, education, and experience required to perform most of the job duties and responsibilities listed for the OSC position and associated with Mr. Antunes former position.

### ii.     Pretext

The evidence described above which supports Mr. Antunes's  prima facie cases of age discrimination and the following described evidence disclose that there are genuine issues of material fact pertaining to whether Defendants' articulated reasons for the decisions to reject Mr. Antunes for the OSC position, select Mr. Campomizzi for the OSC position and as Mr. Antunes's replacement, and concomitantly terminate Mr. Antunes's employment had no basis in fact, did not actually motivate the adverse treatment of him, or were insufficient to justify the adverse treatment of him: (1) Mr. Belloc's notes containing the ages of candidates he interviewed for the OSC position; (2) testimony pertaining to the age-based "pipeline;" (3) evidence that the  OSC position was Mr. Antunes' job with a different title, that Mr. Antunes's was the most qualified candidate for the OSC position, that

the decision to terminate Mr. Antunes's employment was made before his November 25, 2019 sham interview, and that Mr. Campomizzi had been pre-selected for the OSC position and to replace Mr. Antunes although he lacked the minimum requirements for the OSC position and the background, education, and experience required to perform most of the job duties and responsibilities listed for the OSC position and associated with Mr. Antunes former position; (4) Mr. Belloc's email and other communications with Messrs. Wernek and Scardoelli about his selection of Mr. Campomizzi for the OSC position; (5) Mr. Belloc's concocted scheme to create a pretextual justification for and to cover up these acts of discrimination against Mr. Antunes after he had notice of his claims[22]; (6) evidence that Mr, Antunes was the only employee to have his job eliminated in the Jackson offices; (7) evidence that there were no bona fide cost savings associated with the alleged elimination of Plaintiff's job since the higher paying OSC position replaced it and another higher paying job was created for Mr. Mussap; (6) and evidence that Mr. Antunes was not offered the available plant accountant position for which a younger female was later selected.

---

[22] In accordance with the "Cat's Paw" doctrine, Mr. Belloc's age-based animus or preference for Mr. Campomizzi because of his youth should be imputed to the Gerdau MacSteel leadership team even had they actually approved the selection of Mr. Campomizzi for the OSC position. *Staub v. Proctor Hospital,* 562 U.S. 411, 419 (2011); *DeNoma v. Hamilton Cty. Ct. of Common Pleas*, 626 Fed. Appx. 101, 110 (6th Cir. 2015); *Chattman v. Toho Tenax Am., Inc*., 686 F.3d 339, 350–51 (6th Cir. 2012)

### iii.    Conclusion

Accordingly, for these reasons, the District Court committed reversible error when it held that no genuine issues of material fact remain and granted Defendants' motion for summary judgment with respect to these claims.

## C. Genuine Issues of Material Fact Remain with Respect to Mr. Antunes's Claims for Breach of Contract

### 1. Michigan Contract Law

Under Michigan law, the elements of a valid express or implied contract are 1) parties competent to contract, 2) a proper subject matter, 3) a legal consideration, 4) mutuality of agreement, and 5) mutuality of obligation. *See In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003); *Borg-Warner Acceptance Corp., v. Dep't of State*, 169 Mich. App. 587, 590, 426 N.W. 2w 717 (1988), rev'd on other grounds 433 Mich. 16, 444 N.W. 2d 786 (1989). A contract is implied in fact when "the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used, or things done by them, or other pertinent circumstances attending the transaction." *Miller v. Stevens,* 224 Mich. 626, 632, 195 N.W. 481, 482 (1923).

Once a valid express or implied contract has been established, a plaintiff seeking to recover on a breach of contract theory must then prove by a preponderance of the evidence the terms of the contract, that the defendant breached

the terms of the contract, and that the breach caused the plaintiff's injury. *See In re Brown*, 342 F.3d at 628. Michigan courts when construing contracts incorporate relevant, unmentioned laws as implied contract terms based on the common law principle that contracts incorporate the law in force at the time of the agreement. *See LaFontaine Saline, Inc., v. Chrysler Corp.*, 496 Mich. 26, 852 N.W. 2d. 78, 84 (2014); *State Hwy Comm'r v. Detroit City Controller*, 331 Mich. 337, 352; 49 NW2d 318 (1951), quoting *Von Hoffman v. City of Quincy,* 71 U.S. 535, 550 (1866).

### 2. Analysis

The evidence in the record when evaluated in conjunction with Michigan contract law principles and its conflict of law rules as delineated in sections 6, 187-188, and 196 of Restatement (Second) of Conflict of Laws ("Restatement"), see *Kipin Indus., Inc. v. Van Deilen Int'l, Inc.("Kipin"),*182 F.3d 490, 493 (6th Cir.1999); *Chrysler Corp. v. Skyline Indus. Servs., Inc.,* 448 Mich. 113, 125, 528 N.W.2d 698, 702-703 (1995), is sufficient to demonstrate that Gerdau MacSteel breached its employment contract with Mr. Antunes or, at a minimum, evinces that genuine issues of material fact remain with respect to this claim. This conclusion ensues for the following reasons:

**First:** The elements of a valid employment contract between Mr. Antunes and Gerdau MacSteel were established by his employment relationship with Gerdau MacSteel;

**Second:** Mr. Antunes as a Brazilian expatriate was employed by Gerdau MacSteel in accordance with an employment contract which included the following terms and conditions, among others: **(1)** his "[e]mployment [was] protected against arbitrary dismissal or dismissal without cause[23];" **(2)** job elimination did not constitute "cause" for termination of his Gerdau MacSteel employment[24]; **(3)** his employment could not be terminated without requisite 78 days advance notice of employment termination or payment of his applicable salary rate for 78 days in lieu of requisite advance notice of employment termination [25]; and **(4)** his employment could not be terminated without payment of the severance benefits plus an amount equal to 40% of the severance benefits that had accumulated or should have accumulated in his FGTS fund since November, 2003[26], if this occurred without cause. This conclusion ensues because under the Constitution and labor laws of

---

[23] **Ex. 4,** Articles 2-3, 442-443, 447, 477, 482: R. 28-6, PageID. 510-517; **Ex. 5,** Articles 1-3, 7-9, 12-14, 19-20: R. 28-7, PageID. 518-522; **Ex. 6,** Title II, Art. 7, Sections I-III: R. 28-8, PageID. 523-544. *Miller v. Stevens,* 224 Mich. at 632, 195 N.W. 481, 482 (contracts implied in fact).

[24] **Ex. 4,** Articles 2-3, 442-443, 447, 477, 482: R. 28-6, PageID. 510-517; **Ex. 5,** Articles 1-3, 7-9, 12-14, 19-20: R. 28-7, PageID. 518-522.

[25] **Ex. 4,** Articles 2-3, 442-443, 447, 477, 482: R. 28-6, PageID. 510-517; **Ex. 5,** Articles 1-3, 7-9, 12-14, 19-20: R. 28-7, PageID. 518-522; **Ex. 6,** Title II, Art. 7, Section XXI: R. 28-8, PageID. 523-544; **Ex. 9,** Article 1: R. 28-11, PageID. 572-573.

[26] **Ex. 4,** Articles 2-3, 442-443, 447, 477, 482: R. 28-6, PageID. 510-517; **Ex. 5,** Articles 1-3, 7-9, 12-14, 19-20: R. 28-7, PageID. 518-522; **Ex. 6,** Title II, Art. 7, Sections I-III: R. 28-8, PageID. 523-544; **Ex. 8**, Articles 18-20; R. 28-10, PageID. 560-561.

Brazil, these rights and entitlements of Mr. Antunes as a Brazilian expatriate were deemed to be inalienable and/or "tacit" terms and conditions of his co-employment relationship and contract with Gerdau S.A. and Gerdau MacSteel while he worked at Gerdau MacSteel and those aspects of Brazilian law that are more favorable to Mr. Antunes than the laws of the U.S. and Michigan continued to apply to him while he worked at Gerdau MacSteel. *Compare* **Ex. 4,** Articles 2-3, 442-443, 447, 482: R. 28-6, PageID. 510-517; **Ex. 5,** Articles 1-3, 7-9,12-14, 19-20: R. 28-7, PageID. 518-522; **Ex. 6,** Title II, Art. 7, Sections I-III, VIII, XXI: R. 28-8, PageID. 523-544 with *Miller,* 224 Mich. at 632, 195 N.W. at 483 (contracts implied in fact); *LaFontaine Saline, Inc.,* 496 Mich. 26, 852 N.W. 2d. at 84 (implied incorporation of applicable law); *State Hwy Comm'r,* 331 Mich. at 352, 49 NW2d 318 (same); *Von Hoffman,* 71 U.S. at 550 (same).

The provision in the Gerdau MacSteel offer of employment indicating that Mr. Antunes's employment relationship is governed by Michigan law is unenforceable pursuant to section 187(2) of the Restatement (Second) Conflicts of Law to the extent Defendants seek to have Michigan law applied in a manner that deprives him  of his protection against "arbitrary dismissal or dismissal without cause" from his Gerdau MacSteel employment and of his other contractual rights and entitlements as a Brazilian expatriate.  With respect to issues pertaining to terms and conditions of Mr. Antunes's Gerdau MacSteel employment and his

rights and entitlements as a Brazilian expatriate, Brazil has the more significant relationship under the principles stated in section 6 of the Restatement[27]. *See* Restatement §§ 6(2), 187(2), 188(1), and 196. *Compare Kipin*, 182 F.3d at 495-96 (observing that under the Restatement, even an explicit choice of law provision is to be considered a mistake if the chosen law would invalidate an express portion of the contract).

**Third:** Defendants' articulated reason for the termination of Mr. Antunes's employment, i.e., elimination of his job, is an admission that his employment could not be terminated without payment of his applicable salary rate for 78 days in lieu of requisite advance notice of termination and the severance benefits plus an amount equal to 40% of the severance benefits that had accumulated or should have

---

[27]Consistent with section 6(2) contacts analysis: (a) the needs of the interstate and international systems require that Mr. Antunes's rights and entitlements as a Brazilian expatriate that are available to him under Constitution and labor laws of Brazil be protected; (b) this is consistent with and certainly does not conflict with any relevant policies of Michigan; (c) no other states have interests affected by the determination of the issues between Mr. Antunes and Gerdau MacSteel; (d) the justified expectations of both Mr. Antunes as a Brazilian expatriate and Gerdau MacSteel will be protected because Gerdau MacSteel is controlled by Gerdau S.A., it employed Mr. Antunes with knowledge that he was a Brazilian expatriate, and it facilitated his receipt of work visas and a Green Card authorizing him to work at Gerdau MacSteel; (e) incorporation of Mr. Antunes rights and entitlements as a Brazilian expatriate is consistent with Michigan law of contracts; (f) there will be certainty, predictability and uniformity of result with respect to similar issues that may arise between Gerdau MacSteel and its Brazilian expatriate employees; and (g) federal courts routinely apply the laws of foreign countries pursuant to Fed. R. Civ. P. 44.1. *See* Restatement § 6(2).

accumulated in his FGTS fund since November, 2003, because job elimination does not constitute cause to deny these benefits as a matter of Brazil law and under Mr. Antunes's Gerdau MacSteel employment contract. *Compare* **Ex. 4,** Article 2-3, 442-443, 482: R. 28-6, PageID. 510-517 with *Miller,* 224 Mich. at 632, 195 N.W. at 483 (contracts implied in fact); *LaFontaine Saline, Inc.,* 496 Mich. 26, 852 N.W. 2d. at 84 (implied incorporation of applicable law); *State Hwy Comm'r,* 331 Mich. at 352, 49 NW2d 318 (same); *Von Hoffman,* 71 U.S. at 550 (same). Defendants' acknowledgment that they did not provide Mr. Antunes with requisite 78 days advance notice of employment termination or payment of his applicable salary rate for 78 days in lieu of requisite advance notice of employment termination and that neither Gerdau S.A. nor Gerdau MacSteel tendered to Mr. Antunes the severance benefits plus an amount equal to 40% of the severance benefits that accumulated or should have accumulated in his FGTS fund since November, 2003, upon the termination of his employment also are admissions that Gerdau MacSteel breached Mr. Antunes's Gerdau MacSteel employment contract. *Id.*

Accordingly, for these reasons, the District Court committed reversible error when it denied Mr. Antunes's motion for partial summary judgment and when it held that no genuine issues of material fact remain and granted Defendants' motion for summary judgment with respect to his claims for breach of contract.

**D. Genuine Issues of Material Fact Remain with Respect to Mr. Antunes's Claims for unequal pay in violation of the EPA and pay discrimination based on his sex in violation of the ELCRA**

**1. Legal Standards**

The EPA prohibits employers from paying an employee at a rate of pay that is less than that paid to an employee of the opposite sex for performing equal work. The EPA creates a type of strict liability. *See* 29 U.S.C. § 206(d)(1). *Corning Glass Works v. Brennan,* 417 U.S. 188, 195 (1975); *Buntin v. Breathitt Cty. Bd. Of Educ.,*134 F.3d 796, 799-801 (6th Cir. 1998). *See also* 29 C.F.R. § 1620.12.  The plaintiff need not show that the pay disparity results from intentional gender bias or from an intentional discriminatory practice of the defendant because proof of discriminatory intent is not required to establish a prima facie case under the EPA. *Id. See Beck-Wilson,* 441 F.3d 353, 362-363 (6th Cir. 2006); *Buntin,* 134 F.3d at 799; *Hauschild v. United States,* 532 Fed. Cl. 134, 141 (2002).

Jobs need not be identical to be considered "equal work" under the EPA. *See Beck-Wilson*, 441 F.3d at 362. These need only entail substantially similar skill, effort and responsibility[28]. *Id.* Whether two jobs entail substantially equal skill, effort or responsibility or are substantially equal for purposes of the EPA is a factual one determined on a case-by-case basis and "resolved by an overall comparison of the

---

[28] A male plaintiff establishes a prima facie EPA case by comparing the jobs held by female employees and by showing that these entail substantially similar skill, effort and responsibility. He need not compare the skills and qualification of the individual employees holding those jobs. *See Beck-Wilson*, 441 F.3d at 362-63.

work, not its individual segments." *Id.*, *citing Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981). The focus is on the primary duties of each job, not those which are incidental. A court should only consider the skills actually required by the jobs, not the abilities of the employees holding the jobs. *Id.*

"Effort" refers to the physical or mental exertion necessary to the performance of a job. *Hodgson v. Brookhaven Hospital*, 436 F.2d 719, 725 (5th Cir.1970). "Responsibility" concerns the degree of accountability required in performing a job. *See, e.g., Hill v. J.C. Penny,* 688 F.2d 370, 373-74 (5th Cir. 1982). The "working conditions" factor is a flexible standard. *See, e.g., Wetzel v. Liberty Mutual Ins. Co.,* 449 F. Supp. 397, 403-04 (W.D. Pa. 1978). *Accord Edmondson v. Simon,* 497 F. Supp. 411, 414 (N.D. Ill. 1980).

### 3. Analysis

The evidence in the record is sufficient to demonstrate or, at a minimum, evinces that genuine issues of material fact remain with respect to pri*ma facie* cases of unequal pay in violation of the EPA and pay discrimination based on his sex in violation of the ELCRA. This conclusion ensues because the testimony of Messrs. Antunes and Karmol and the other evidence in the record evinces that: **(a)** the work which had been performed by Mr. Antunes as Gerdau MacSteel's Accounting Manager, like the work Mr. Karmol had previously performed as its Vice President and Controller, was at least equal to the work Ms. Blackwell had performed as Plant

Controller II and later as Regional Controller; **(b)** her job had required no more skill, effort, and responsibility than those associated with Mr. Antunes's job; **(c)** their jobs had been performed under similar working condition; and (d) Mr. Antunes received substantially less annual salary than Ms. Blackwell although they had the same pay grade and he had far more extensive job duties and responsibilities than her. *See* Antunes Affidavit, ¶ ¶ 4-17 and **Exhibits A** to **E**: R. 36-1, PageID.1365-1374, 1398-1420; Karmol, 20:19-38:8, 49:10-62:20: R. 36-3, PageID. 1523-1528, 1530-1533; Blackwell, 15:20-27:14: R. 36-6, PageID.1556-1559; Boucher, 59:20-74:11, 86:11-88:11, 89:3-97:4, 100:22-105:8 and exhibits 31-34: R. 36-6, PageID. 1563-1567, 1570-1574.

Defendants bear the heavy burden of proving by a preponderance of the evidence one or more of the 4 exceptions or affirmative defenses to EPA liability contained in section206(d)(1) of the EPA in order to avoid liability to Mr. Antunes for unequal pay in violation of the EPA and pay discrimination based on his sex in violation of the ELCRA[29]. *Corning Glass Works, v. Brennan,* 417 U.S. at 196-197, 204; *Beck-Wilson*, 414 F.3d at 362-63. They did not assert or sustain their burden of proving any of these affirmative defenses in their motion for summary judgment. Accordingly, for these reasons, the District Court committed reversible error when

---

[29] The evidence which demonstrates Mr. Antunes's prima facie case for violation of the EPA also is sufficient to demonstrate a prima facie case of pay discrimination based on sex in violation of the ELCRA.

it held that no genuine issues of material fact remain and granted Defendants' motion for summary judgment with respect to these claims.

## CONCLUSION AND RELIEF REQUESTED

Plaintiff-Appellant Jose Antunes respectfully requests that this Court reverse the District Court's grant of summary judgment in favor of Defendants-Appellees with respect to his claims against them for and remand this case to the District Court for trial.

Respectfully submitted,

**GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN P.C.**

 */s/ Raymond J. Carey*_____
Raymond J. Carey (P33266)
GASIOREK MORGAN,
Attorneys for Plaintiff-Appellant
Dated: November 9, 2022          rcarey@gmgmklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all parties via the ECF system.

*/s/ Randi Hanlon*

- 47 -

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(g)</u>

**Certificate of Compliance with Type-Volume Limitation, Typeface Requirements and Type Style Requirements**

1.    This brief conforms with the type-volume limitation of F.R.A.P. 32(a)(7)(B) because it contains 12,588 words, excluding the parts of the brief that are exempted by F.R.A.P 32(f).

2.    This brief complies with the typeface requirements of F.R.A.P. 32(a)(5) and the type style requirements of F.R.A.P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

*/s/ Raymond J. Carey*
Raymond J. Carey (P33266)

**ADDENDUM**

**DESIGNATION OF RELEVANT DOCUMENTS IN THE RECORD**

| | | |
|---|---|---|
| Complaint | R. 1 | Page ID. 1-47 |
| Answer | R.9 | PageID. 84-171 |
| Plaintiff's Motion for Partial Summary Judgment | R.28 | Page ID. 308-633 |
| Defendant's Motion for Summary Judgment | R. 29 | Page ID. 634-1224 |
| Plaintiff's Response in Opposition and Brief in Support of Response in Opposition to Defendant's Motion for Summary Judgment and Fact Appendix | R. 35, 36 | Page ID. 1321-1619 |
| Plaintiff's Corrected Brief in Support of Response in Opposition to Defendant's Motion for Summary Judgment | R. 40-1 | Page ID. 1807-1845 |
| Plaintiff's Reply Brief in Support of Partial Summary Judgment | R. 39 | Page ID. 1754-1764 |
| Plaintiff's Response to Defendants' Motion to Strike | R. 40 | Page ID. 1765-1806 |
| | | |
| | | |
| | | |

| | | |
|---|---|---|
| Opinion and Order | R.50 | Page ID. 1980-2024 |
| Judgment | R.51 | Page ID. 2025 |
| Notice of Appeal | R. 52 | Page ID. 2026-2027 |