ORAL ARGUMENT NOT YET SCHEDULED

CASE NO. 22-1805

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

JOSE ANTUNES,
*Plaintiff-Appellant*

v.

GERDAU MACSTEEL, INC., GERDAU
AMERISTEEL US, INC., and RODRIGO BELLOC,
*Defendants-Appellees*

ON APPEAL
FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

District Court Case No. 2:20-CV-10724

**BRIEF ON APPEAL
OF DEFENDANTS-APPELLEES
GERDAU MACSTEEL, INC., ET AL.**

Jaclyn R. Giffen (P75316)
jgiffen@littler.com
LITTLER MENDELSON, P.C.
200 Renaissance Center
Suite 3110
Detroit, Michigan 48243
Telephone: (313) 446-6400
Facsimile:  (313) 446-6405

*Attorneys for Defendants-Appellees*

## CORPORATE DISCLOSURE STATEMENT
## OF DEFENDANT-APPELLEE GERDAU MACSTEEL, INC.

Pursuant to Fed. R. App. 26.1 and 6 Cir. R. 26.1, Gerdau Macsteel, Inc.

("Macsteel") makes the following disclosures:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?
    If yes, list below the identity of the parent corporation or affiliate and
    the relationship between it and the named party:

    **Yes.**

    **Gerdau S.A. (Brazil) is Macsteel's parent company that owns 10%
    or more of Macsteel's stock. Macsteel is a subsidiary of Gerdau
    S.A.**

2.  Is there a publicly owned corporation, not a party to the appeal, that has
    a financial interest in the outcome? If yes, list the identity of such
    corporation and the nature of the financial interest:

    **Yes.**

    **Gerdau S.A. (Brazil) is Macsteel's parent company that owns 10%
    or more of Macsteel's stock. Macsteel is a subsidiary of Gerdau
    S.A.**

    */s/ Jaclyn R. Giffen*
    Jaclyn R. Giffen
    *Attorneys for Defendants-Appellees*

ii

## CORPORATE DISCLOSURE STATEMENT
## OF DEFENDANT-APPELLEE GERDAU AMERISTEEL US, INC.

Pursuant to Fed. R. App. 26.1 and 6 Cir. R. 26.1, Gerdau Ameristeel US,

Inc.("Ameristeel") makes the following disclosures:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?
     If yes, list below the identity of the parent corporation or affiliate and
     the relationship between it and the named party:

     **Yes.**

     **Gerdau S.A. (Brazil) is Ameristeel's parent company that owns
     10% or more of Ameristeel's stock. Ameristeel is a subsidiary of
     Gerdau S.A.**

2.   Is there a publicly owned corporation, not a party to the appeal, that has
     a financial interest in the outcome? If yes, list the identity of such
     corporation and the nature of the financial interest:

     **Yes.**

     **Gerdau S.A. (Brazil) is Ameristeel's parent company that owns
     10% or more of Ameristeel's stock. Ameristeel is a subsidiary of
     Gerdau S.A.**

                              */s/ Jaclyn R. Giffen*
                              Jaclyn R. Giffen
                              *Attorneys for Defendants-Appellees*

iii

## CORPORATE DISCLOSURE STATEMENT
## OF DEFENDANT-APPELLEE RODRIGO BELLOC

Pursuant to Fed. R. App. 26.1 and 6 Cir. R. 26.1, Rodrigo Belloc ("Belloc")

makes the following disclosures:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   **No.**

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

   **Yes.**

   **Gerdau S.A. (Brazil) is Macsteel's parent company that owns 10% or more of Macsteel's stock. Macsteel is a subsidiary of Gerdau S.A.**

   */s/ Jaclyn R. Giffen*
   Jaclyn R. Giffen
   *Attorneys for Defendants-Appellee*

# TABLE OF CONTENTS

PAGE

STATEMENT REGARDING ORAL ARGUMENT ................................................xi

STATEMENT OF THE ISSUES PRESENTED.................................................. xii

I.    STATEMENT OF THE CASE. ...................................................1

    A.    Introduction. ...................................................................1

    B.    Statement of Facts. ..........................................................2

        1.    The Parties...............................................................2

        2.    Antunes' Employment with Macsteel.......................................3

            a.    Antunes' Job Duties...................................................3

            b.    Macsteel Undergoes Business Restructuring. ................7

            c.    Campomizzi's Qualifications. ......................................11

            d.    Antunes' December 6, 2019, Position Elimination. ......12

    C.    Relevant Procedural History. ..........................................13

        1.    Opinion & Order. ........................................................14

            a.    Motion to Strike.......................................................14

            b.    Breach of Contract.....................................................15

            c.    Alienage and National Origin Discrimination...............16

            d.    Age Discrimination.....................................................18

            e.    Wage Discrimination. .................................................19

            f.    Tortious Interference. .................................................19

         2.    Antunes' Appeal. ........................................................20

II.    SUMMARY OF THE ARGUMENT. ...........................................20

III.    ARGUMENT...............................................................22

# TABLE OF CONTENTS
(CONTINUED)

<div align="right">PAGE</div>

A.  Standard of Review. ...............................................................22

    1.  Summary Judgment. ................................................22

    2.  Motion to Strike. ....................................................23

B.  The Court Need Not Review the Merits of this Appeal Because Antunes' Opening Brief Fails to Comply with Fed. R. App. P. 28. ..24

    1.  Antunes' Appeal Should be Dismissed Because His Brief Fails to Cite to "Facts."............................................24

    2.  Antunes Waived Appellate Review Because He Fails to Set Forth His Reasons and Contentions Upon Which He Relies........................................................................26

C.  Even If Antunes' Appeal Is Not Dismissed, the Factual Record Supports Affirming the District Court's Ruling. ...............................28

    1.  The District Court Did Not Abuse Its Discretion When It Granted in Part Defendants' Motion to Strike. ........................28

        a.  Antunes Does Not Explain How the District Court Erred When It Determined His Affidavit Contradicted Prior Testimony and Waives Appellate Review Regarding the District Court's Finding That the Affidavit Made Impermissible Legal Arguments. ..........................................28

        b.  Antunes Fails to Demonstrate How the District Court Purportedly Erred by Not Considering the Exhibits Incorporated into His Affidavit. .....................31

    2.  The District Court Properly Exercised Its Discretion to Deny Antunes' Partial Motion for Summary Judgment on His Breach of Contract Claim and Correctly Entered Judgment in Defendants' Favor on Same. ................................32

<div align="center">vi</div>

# TABLE OF CONTENTS
(CONTINUED)

PAGE

3.  The District Court Correctly Concluded There Were No Genuine Disputes of Material Fact Regarding Antunes' Claims of Discrimination Under § 1981, the ELCRA, and the EPA. ...................................................................35

    a.  Alienage and National Origin Discrimination...............36

    b.  Age Discrimination.........................................................38

        (1)  The District Court Properly Held Antunes' Purported Direct Evidence of Age Discrimination Was Not Direct Evidence Because It Requires Inferences. ..........................38

        (2)  The District Court Properly Held Antunes Failed to Establish Circumstantial Evidence of Age Discrimination. ........................................41

            (a)  Antunes Failed to Set Forth a *Prima Facie* Case of Age Discrimination Because the Circumstances Did Not Give Rise to an Inference of Unlawful Discrimination...........................................41

            (b)  Antunes Does Not Identify Any Basis to Find Error with the District Court's Conclusion That There Was No Evidence of Pretext. ..................................45

    c.  Wage Discrimination. ....................................................49

IV.  CONCLUSION............................................................................53

# TABLE OF AUTHORITIES

PAGE

## CASES

*Alberty v. Columbus Twp.*, 730 F. App'x 352 (6th Cir. 2018) ................................37

*Alexander v. CareSource*, 576 F.3d 551 (6th Cir. 2009) ........................................22

*Allen v. Highlands Hosp. Corp.*, 545 F.3d 387 (6th Cir. 2008).............................37

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..........................................23

*Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219 (7th Cir. 1995) ............. 24, 26

*Bender v. Hecht's Dep't Stores*, 455 F.3d 612 (6th Cir. 2006) .............................48

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................23

*Clark v. Johnson & Higgins*, No. 97-4233, 1999 WL 357804
  (6th Cir. May 28, 1999) .......................................................................................53

*Corning Glass Works v. Brennan*, 417 U.S. 188 (1974) ........................................50

*Crowder v. Railcrew Xpress*, 557 F. App'x 487 (6th Cir. 2014)...........................53

*El-Zabet  v. Nissan N. Am., Inc.,* 211 F. App'x 460, 462 (6th Cir. 2006) .............38

*Gale v. Donohue*, 824 F. App'x 304 (6th Cir. 2020)......................................... 45, 47

*Hanover Ins. Co. v. Am. Eng'g Co.,* 33 F.3d 727, 730 (6th Cir. 1994) .................22

*Harris v. City of St. Clairsville*, 330 F. App'x 68 (6th Cir. 2008).................. passim

*Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558 (6th Cir. 2003)........23

*Johnson v. Kroger Co.*, 319 F.3d 858 (6th Cir. 2003)..................................... 38, 39

*Jones v. Butler Metro. Hous. Auth.*, 40 F. App'x 131 (6th Cir. 2002) ...................31

*K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818 (6th Cir. 2018) ................47

*Kahn v. Dean & Fulkerson, P.C.*, 238 F.3d 421 (6th Cir. 2000)............................22

*Maldonado v. Nat'l Acme Co.*, 73 F.3d 642 (6th Cir. 1996) ........................... 46, 52

viii

# TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).................23

*McCord v. Bd. Of Educ. Of Fleming Cnty.*, No. 17-5548, 2018 WL 1724560
  (6th Cir. Jan. 30, 2018) .........................................................................................24

*McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997) ...................................... passim

*Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527 (6th Cir. 2002)..........32

*Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516 (6th Cir. 2008) ...........................41

*Mitchell v. Toledo Hosp.*, 964. F.2d 577 (6th Cir. 1992)..........................................41

*Ondo v. City of Cleveland*, 795 F.3d 597 (6th Cir. 2015).................... 23, 28, 29, 30

*Onge v. Livingston Cty.*, No. 04-71329, 2005 WL 8154803
  (E.D. Mich. July 8, 2005)......................................................................................32

*Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir. 1994).....................23

*Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806 (6th Cir. 2011) ...........................41

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291 (6th Cir. 2005).........................27

*Reeb v. Ohio Dep't of Rehab. & Corr.,* 435 F.3d 639 (6th Cir.2006) .....................24

*Rouch World, LLC v. Dep't of C.R.*, No. 162482, 2022 WL 3007805
  (Mich. July 28, 2022)............................................................................................53

*Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544 (6th Cir. 2004)..........43

*Salem v. City of Pontiac Sch. Dist.,* No. 81-1508, 1985 WL 12820, at *1
  (6th Cir. Jan. 11, 1985) ........................................................................................38

*United States Fire Ins. Co. v. City of Warren*, No. 10-CV-13128,
  2012 WL 13006156 (E.D. Mich. June 12, 2012) ................................................32

*United States v. Carson*, 560 F.3d 566 (6th Cir. 2009) ..........................................28

*United States v. Johnson*, 440 F.3d 832 (6th Cir. 2006).................................. passim

# TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*United States v. Universal Mgmt. Servs., Corp.*, 191 F.3d 750 (6th Cir. 1999) ............................................................................ 40, 44, 47

*Wise v. Zwicker & Associates, P.C.*, 780 F.3d 710 (6th Cir. 2015) ........................ 33

*Wright v. Murray Guard, Inc.*, 455 F.3d 702 (6th Cir. 2006) ................................ 50

STATUTES

29 U.S.C. § 206 ................................................................................ 50

42 U.S.C. §1981 ............................................................................ 35, 47

RULES

Fed. R. App. P. 28 ........................................................................ 24, 25

Fed. R. Civ. P. 56 ........................................................................ 22, 30

TREATISES

2A Fed. Proc., L. Ed. § 3:730 .............................................................. 24

Restatement (Second) of Conflict of Laws § 187 ............................................ 33

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellees Gerdau Macsteel, Inc. ("Macsteel"), Gerdau Ameristeel US, Inc. ("Ameristeel"), and Rodrigo Belloc ("Belloc"), respectfully contend this case should be decided without oral argument because the facts and legal arguments at issue are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. However, in the event the Court entertains oral argument in this matter, Macsteel, Ameristeel, and Belloc respectfully reserve their rights to participate in such argument.

## STATEMENT OF THE ISSUES PRESENTED

1.      Did Plaintiff-Appellant waive appellate review by failing to comply with Fed. R. App. P. 28, where the opening brief includes an argumentative statement of "facts" not adequately supported by citations to the record and makes conclusory arguments, asserting the District Court erred, without offering further analysis or explanation regarding how the District Court purportedly erred in its reasoning or application of law?

> Defendants-Appellees Answer:           "Yes."
>
> Plaintiff-Appellant's Answer:           "No."

2.      Did the District Court properly exercise its discretion when it granted, in part, Defendants-Appellees' motion to strike Plaintiff-Appellant's affidavit and incorporated exhibits where the affidavit contradicted his prior deposition testimony and contained inadmissible, speculation, conclusory statements, and legal arguments?

> Defendants-Appellees Answer:           "Yes."
>
> Plaintiff-Appellant's Answer:           "No."

3.      Did the District Court properly exercise its discretion to deny Plaintiff-Appellant's motion for partial summary judgment pursuant to Fed. R. Civ. P. 56 on his breach of contract claim, and instead grant Defendants-Appellees' motion for summary judgment pursuant to Fed. R. Civ. P. 56 regarding same, where there was

no legal basis to incorporate Brazilian law into an at-will employment relationship governed under Michigan law and the record otherwise lacked a genuine dispute of material fact?

Defendants-Appellees Answer:    "Yes."

Plaintiff-Appellant's Answer:    "No."

4.    Did the District Court properly grant Defendants-Appellees' motion for summary judgment pursuant to Fed. R. Civ. P. 56 on Plaintiff-Appellant's claims of alienage discrimination, asserted under 42 U.S.C. § 1981, and national origin discrimination, asserted under the Michigan Elliott-Larsen Civil Rights Act, where the law dictates § 1981 is not a proper vehicle for a claim of alienage discrimination and the record otherwise lacked evidence of a genuine issue of material fact?

Defendants-Appellees Answer:    "Yes."

Plaintiff-Appellant's Answer:    "No."

5.    Did the District Court properly grant Defendants-Appellees' motion for summary judgment pursuant to Fed. R. Civ. P. 56 on Plaintiff-Appellant's claim of age discrimination, asserted under the Michigan Elliott-Larsen Civil Rights Act, where the record lacked evidence of a genuine issue of material fact?

Defendants-Appellees Answer:    "Yes."

Plaintiff-Appellant's Answer:    "No."

6.      Did the District Court properly grant Defendants-Appellees' motion for summary judgment pursuant to Fed. R. Civ. P. 56 on Plaintiff-Appellant's wage discrimination claims, specifically, Plaintiff-Appellant's claim of pay discrimination based on sex in violation of the Michigan Elliott-Larsen Civil Rights Act and Equal Pay Act of 1963, 29 U.S.C. § 206(d), where the claims were based upon the same set of facts and the record otherwise lacked evidence of a genuine issue of material fact?

       Defendants-Appellees Answer:      "Yes."

       Plaintiff-Appellant's Answer:      "No."

## I.    STATEMENT OF THE CASE.

### A.    Introduction.

While working as a Brazilian expatriate for Gerdau Ameristeel US, Inc. ("Ameristeel"), Gerdau Macsteel, Inc. ("Macsteel"), a separate corporation, made Plaintiff-Appellant Jose Antunes ("Antunes") an offer of at-will employment in May 2008, which he unconditionally accepted. Antunes worked for Macsteel until his position was eliminated in 2019 as part of a company-wide cost savings effort. Antunes has since filed this lawsuit against Macsteel, Ameristeel, and Macsteel's President, Rodrigo Belloc ("Belloc") (collectively, "Defendants"), asserting a variety of claims, including breach of contract, discrimination, and tort claims.

The District Court granted Defendants' Motion for Summary Judgment on all claims, which Antunes now appeals. His appeal, however, fails to explain how the District Court erred in reaching any conclusion or how, as to summary judgment, the record supports the result he seeks.

Because it is not this Court's obligation to scour the record and supply Antunes' argument for him, he has waived appellate review. Even if the merits of the appeal are reviewed, however, there is no basis in fact or law to reverse the District Court's decision. Defendants request the Court affirm in full the District Court's Order at issue in this appeal.

**B.    Statement of Facts.**

    **1.    The Parties.**

Defendants Macsteel and Ameristeel are United States corporations that produce specialty steel products throughout the state of Michigan. Opinion & Order ("Opn.") 2, R.50, PageID.1981; Deposition of Jose Antunes ("Antunes") 13:14-15:13, 19:6-20:22, R.29-2, PageID.688-90. Belloc is Macsteel's current President. Opn. 2, R.50, Page ID.1981; Deposition of Rodrigo Belloc ("Belloc") 21:11, R.29-11, PageID.921. Both Macsteel and Ameristeel are subsidiaries of Gerdau S.A., a Brazilian company.[1] Opn. 2, R.50, PageID.1981; Antunes 13:20-14:4, R.26-2, PageID.688-89; Deposition of Brandt Hinojosa ("Hinojosa") 69:11-16, R.29-10, PageID.901.

Antunes is a 52-year-old man of Brazilian ancestry and national origin. Opn. 2, R.50, PageID.1981; Antunes 21:5-19, R.29-2, PageID.690. In November 2003, he was hired in Brazil by Gerdau S.A., before being transferred in 2006 to Ameristeel to work at its Tampa, Florida location. Opn. 2, R. 50, Page ID.1981; Antunes 25:12-26:4, R.29-2, PageID.691-92.[2] It was anticipated Antunes would work at Ameristeel for one to three years, before returning to Gerdau S.A. in Brazil.

---

[1] Gerdau S.A. has never been a party to this litigation. Opn. 2, R.50, Page ID.1981.

[2] Antunes states he was hired on November 3, 2003, Br. 5, Doc. 15, Page 17, and claims to have, among other things, "over 28 years of experience" in finance, audit, and accounting. Br. 4, Doc. 15, Page 16. These claims are not supported by the record citations identified in the brief.

Opn. 2, R.50, PageID.1981; Antunes 26:12-26:11, R.29-2, PageID.691-92.

Antunes worked at Ameristeel as a Brazilian expatriate until 2008. Opn. 2, R.50, PageID.1981; Antunes 29:22-25, R.29-2, PageID.692. Rather than return to Brazil, Antunes accepted a position as a financial planning manager for Macsteel's corporate office in Jackson, Michigan. Opn. 2, R.50, PageID.1981; Antunes 30-2-7, R.29-2, PageID.693. Antunes' offer letter identified his start date as June 1, 2008, and advised the role was at-will, stating "[y]our employment may be terminated by either you or Gerdau Macsteel at any time." Opn. 2, R.50, PageID.1981; May 7, 2008 Offer Letter, R.29-3, PageID.778-79. The letter also stated the parties' employment agreement was to be governed by Michigan law. Opn. 2, R.50, PageID.1981; May 7, 2008 Offer Letter, R.29-3, PageID.779.[3] Antunes accepted Macsteel's offer and signed the offer letter on May 7, 2008. Opn. 2, R.50, PageID.1981; May 7, 2008 Offer Letter, R.29-3, PageID.778-79; Antunes 30:2-7; 33-2-34:8, R.29-2, PageID.693-94.

## 2.    Antunes' Employment with Macsteel.

### a.    Antunes' Job Duties.

When Antunes first joined Macsteel, he reported to Jeff Karmol ("Karmol"),

---

[3] Antunes' statement of "facts" summarily states his employment with Macsteel was subject to, and governed by, the Federative Republic of Brazil Constitution of 1988, as amended and the labor laws of Brazil. Br. 6, Doc. 15, Page 18. This is not a "fact" as implied. As discussed more fully below, the District Court rejected this proposition. *See* Opn. 12-20, R.50, PageID.1991-99.

Macsteel's Vice President ("VP") Group Controller. Opn. 3, R.50, PageID.1982; Antunes 34:14-16, 107:17-19, R.29-2, PageID.694, 712. When Karmol retired in November 2015, Antunes reported to Jose Altamir ("Altamir"), Macsteel's Director of Financial Planning, until Altamir's position was eliminated in March 2017. Opn. 3, R.50; PageID.1982; Antunes 72:5-21, R.29-2, PageID.703. Antunes next reported to Mark Marcucci ("Marcucci"), Macsteel's then President. Opn. 3, R.50; PageID.1982; Antunes 72:5-19, R.29-2, PageID.703. As Marcucci prepared to retire, Antunes began reporting to Belloc, Macsteel's current President, until December 6, 2019, when Antunes' position was eliminated. Opn. 3, R.50, PageID.1982; Antunes 59:8-10, 73:6-14, R. 29-2, PageID.700, 703.

While employed at Macsteel, Antunes' title changed from financial planning manager to accounting manager in October 2012. Opn. 3, R.50, PageID.1982; Antunes 58:18-59:2, R. 29-2, PageID.700. Antunes' reporting relationships were not affected by this change. Opn. 3, R.50, PageID.1982; Antunes 58:18-59:2, R.29-2, PageID.700.

As an accounting manager, Antunes was responsible for overseeing Macsteel's credit department, accounts receivables, accounts payable, implementation of Plex accounting software, and negotiating shared services contracts. Antunes 93:7-95:10, R.29-2, PageID.708-09; Deposition of Mark Marcucci ("Marcucci") 113:9-118:5, R.29-12, PageID.986-88; Position Description,

R.29-4, PageID.781-85.[4] However, his primary job function was compiling data from the controllers at each of Macsteel's mills to create end-of-month financial reports summarizing Macsteel's financial performance for Gerdau S.A. Opn. 3, R.50, PageID.1982; Antunes 94:22-95:10, R.29-2, PageID.709. Antunes provided only a high-level overview of profit and loss results at monthly meetings, while the general managers and controllers of the mills, including Donna Blackwell, provided the detailed information on cost deviations. Opn. 3, R.50, PageID.1982; Marcucci 113:9-118:19, R.29-12, PageID.986-88. According to his supervisor, Marcucci, Antunes lacked the requisite experience and knowledge to perform the detailed work of the controllers because he did not have the experience of working in a steel plant. Opn. 3, R.50, PageID.1982; Marcucci 110:8-111:10, R.29-12, PageID.986.

Macsteel hired Blackwell, Antunes' chosen comparator for this lawsuit, on February 3, 2014, at its plant in Monroe, Michigan as a Controller. Opn. 3, R.50, PageID.1982; Deposition of Donna Blackwell ("Blackwell") 15:20-16:5, R.29-13,

---

[4] Antunes argues his job description "did not disclose all of the job duties and responsibilities that [he] exercised when employed . . . ." Br. 10, Doc. 15, Page 22. He cites to paragraph 4-9, 11, and 13 of his affidavit, and Exhibits A-C incorporated therein, to support this claim, but as discussed below, paragraphs 4-5, 9, 11, and 13 were properly struck by the District Court, and the District Court did not rely upon the exhibits the affidavit incorporated. *See* Opn. 9, 11, R50, PageID.1988, 1900. The other citations Antunes relies upon, specifically the deposition testimony of Karmol and Marcucci, do not support this claim, and Antunes does not identify any record citation for the "referenced exhibits" of those depositions. Antunes also relies upon these citations to claim he was the "chief financial officer for Gerdau Macsteel," but these citations do not support this contention either.

PageID.1007. She was promoted to Regional Controller in August 2017 and oversaw the finances of two of Macsteel's three mills, which accounted for 70 percent of Macsteel's profitability. Opn. 3, R.50, PageID.1982; Blackwell 23:16-24:25, 25:1-4, 44:17-23, R.29-13, PageID.1009, 1014; Marcucci Dep 128:25-129:5, R.29-12, PageID.990. Antunes had no such oversight responsibilities. Opn. 27, R.50, PageID.2006.

As a Controller, Blackwell required, and possessed, a firm understanding of where costs lie to understand and analyze the impact of such costs on the steel-making process and budget deviations. Opn. 27, R.50, PageID.2006, Marcucci 110:17-118:5, R.29-12, PageID.986-88. This was the "big difference" between her role and Antunes' role. *Id.*[5] Antunes compiled the data related to budget deviations

---

[5] In his opening brief, Antunes contends Karmol confirmed the "work performed by Mr. Antunes as Gerdau Macsteel's Accounting Manager . . . was at least equal to the work Ms. Blackwell performed . . . ." Br. 11, Doc. 15, Page 23. The District Court addressed this contention in footnote 11 of its Opinion & Order, stating, in relevant part, that Karmol

> did not state in his deposition that Antunes's work was equal to Blackwell's work. Rather, while he confirmed that there may be some overlap between the skills and qualifications of accounting managers and controllers, he stated Antunes did not spend enough time at the mills to be able to do the type of analysis that controllers were required to do.

Opn. 27 n. 11, R.50, PageID.2006 (citing Deposition of Jeff Karmol 68). Antunes makes no argument that this finding by the District Court was flawed or otherwise incorrect – it is not.

but, unlike mill controllers, did not investigate or determine the specific reasons for deviations. *Id.*

### b.   Macsteel Undergoes Business Restructuring.

In June 2019, in preparation for Marcucci's retirement, Macsteel began transitioning the role of president from Marcucci to Belloc. Opn. 3, R.50, PageID.1982; Antunes 73:6-14, R.29-2, PageID.703. As part of the transition, Belloc studied Macsteel's financial data and learned its profitability was suffering. Opn. 3-4, R.50, PageID.1982-83; Belloc 40:1-25, R.29-11, PageID.926. With Macsteel's leadership team, he created a cost savings plan to counter this loss. Opn. 4, R.50, PageID.1983; Belloc 40:1-25, R.29-11, PageID.926; Deposition of Andre Rodrigues ("Rodrigues") 206:4-210:23, R.29-8, PageID.852-53. This plan required Macsteel to restructure its business to save costs, including closing down one of its three mills, conducting layoffs, and eliminating positions. Opn. 4, R.50, PageID.1983; Rodrigues Dep at 209:2-210:14, R.29-8, PageID.852-53.

To implement the plan, during the fall of 2019, all employees, including Antunes, were offered a Voluntary Separation Incentive Program ("VSIP"), which allowed employees to volunteer for separation in lieu of the Company conducting involuntary separations. Opn. 4, R.50, PageID.193; Antunes 115:17-116:10, R.29-2, PageID.714; Declaration of Adam Tabor ("Tabor Dec.") ¶¶9-11, R.29-16, PageID.1014. Antunes declined his VSIP Package. Opn. 4, R.50, PageID.1983;

Tabor Dec. ¶10, R.29-16, PageID.104, Antunes 118:20-122:4, R.29-2, PageID.715-16.

To improve the financial condition of Macsteel, Belloc also determined he needed a person who had experience in the steel business and as a controller, to work with him and other leadership to develop a strategic financial plan. Opn. 4, R.50, PageID.1983; Belloc 40:1-25, 70:25-71:9, 75:13-76:10, 79:12-17, R.29-11, PageID.926, 934-36. A new position – Operations Strategic Controller ("OSC") – was developed to address this need. Opn. 4, R.50, PageID.1983; Belloc 40:1-25, 70:25-71:9, 75:13-76:10, 79:12-17, R.29-11, PageID.926, 934-36.

It was Macsteel's preference to offer this new position to an internal candidate, but the posting was expanded to other Gerdau S.A. subsidiaries to allow for a broader candidate pool. Opn. 4, R.50, PageID.1983; Belloc 66:12-24, R.29-11, PageID.933. Twelve individuals ultimately applied for the role, including Antunes, Blackwell (American female), Brandt Hinojosa (57-year-old American male), who was Macsteel's Manager of Financial Planning and Analysis, and Felipe Campomizzi (31-year-old Brazilian male), who was the Chief Financial Officer of Gerdau Summit, a joint venture between Gerdau S.A. and two Japanese companies. Opn. 4, R.50, PageID.1983; Antunes 142:23-143:3, R.29-2, PageID.721; Antunes' OSC Job Application, R.29-6, PageID.791-95; Blackwell 47:25-48:4, R.29-13, PageID.105; Hinojosa 80:13-20, R.29-10, PageID.904; Deposition of Felipe

8

Campomizzi ("Campomizzi") 36:4-16, R.29-14, PageID.1031; Belloc 81:15-20, R.29-11, PageID.936.

When evaluating a candidate for the position, Belloc's primary concern was work experience. Opn. 4, R.50, PageID.1983; Belloc 70:25-71:19, 75:13-76:10, 79:12-17; R.29-11, PageID.934-36; Rodrigues 144:7-13, R.29-8, PageID.836. He was looking for an individual with experience in a controller position, who could also develop strategic business plans and new business opportunities. Opn. 4, R.50, PageID.1983; Belloc 75:13-78:11, R.29-11, PageID.935-36.

Belloc and the VP of Human Resources, Andre Rodrigues, selected seven candidates to interview for the first round of interviews, including Antunes. Opn. 4, R.50, PageID.1983; Belloc 85:10-24, R.29-11, PageID.937. Belloc's notes reflected the age of some candidates because candidates offered their ages, unprompted, when discussing their background and qualifications. Opn. 4-5, R.50, PageID.1983-84; Belloc 124:20-125:1, R.29-11, PageID.947.[6]

---

[6] Antunes alleges in his statement of "facts" he was told the OSC position was part of an "age-related succession 'pipeline' . . . ." Br. 16, Doc. 15, Page 28. Antunes does not support this statement with any citation to the record. To the extent the Court looks to the various citations offered at the end of the paragraph containing this claim, Antunes' proffered support comes from his struck affidavit, and the deposition testimony of himself and Hinojosa. *Id.* The cited testimony does not suggest an age-related succession pipeline existed. Antunes' testimony reveals he merely made an assumption, Antunes 130:25-133:3, R.36-2, PageID.1515, and Hinojosa testified "[t]hat's not correct," when asked if the OSC role was "deemed to be a pipeline to groom younger Brazilian expats or younger people in general . . . ." Hinojosa Dep. 108: 11-23, R.36-9, PageID.1601.

It is undisputed Antunes' interview did not go well. Antunes described it as "tense." Antunes 146:9-11, R.29-2, PageID.722; Opn. 5, R.50, PageID.1984. Belloc explained it was a very different interview from the others because Antunes spent most of his time expressing dissatisfaction with Macsteel, and then asked if he was going to be fired. Antunes 148:2-12, R.29-2, PageID.722; Belloc 104:22-108:16, R.29-11, PageID.942-43; Rodrigues 177:15-178:3; R.29-8, PageID.844-45; Opn. 5, R.50, PageID.1984. Antunes also failed to provide insight on his proposed financial strategy on how Macsteel could remain competitive or reduce costs and increase its profitability, key drivers for the new role. Belloc 59:14-60:3, R.29-11, PageID.931.

Antunes was not recommended for a second interview. Opn. 5, R.50, PageID.1984; Belloc 91:6-9, R.29-11, PageID939. Instead, Campomizzi, Blackwell, and Hinojosa proceeded to the next round of interviews with Macsteel's leadership team, which included Darrel Moore, VP General Manager ("GM"), Michigan-Indiana Operations, a 55-year-old American male; John Kelleher, VP GM, Fort Smith Mill, a 60-year-old American male; Luis Colembergue Klujszo, VP, Sales and Technology, a 52-year-old Brazilian male; Adam Tabor, VP, Order Fulfillment, Logistics, and IT, a 35-year-old American male; and Daniel Mussap, VP, Operations and Strategic Planning, a 46-year-old Brazilian male. Opn. 5, R.50, PageID.1984; Belloc 85:25-86:12, 91:6-9, R.29-11, PageID.937-39; Defs' First Supp. Resps. to Pl's Rogs, 12-13, R.29-12, PageID.1106-07; Tabor Dec. ¶¶17-18, R.29-16,

PageID.1075. After interviews were complete, Campomizzi was selected for the position by the leadership team. Opn. 5, R.50, PageID.1984; Tabor Dec. ¶¶17-18, R.29-16, PageID.1075; Belloc 132:4-15, R.29-11, PageID.949.[7]

### c.    Campomizzi's Qualifications.

In making this decision, the leadership team considered Campomizzi's work experience and believed his controller job duties at Gerdau Summit, which he had been successfully performing, were nearly identical to the new OSC role for which he was interviewing. Tabor Dec. ¶16, R.29-16, PageID.1075; Declaration of John Kelleher ¶¶6-10, R. 29-18, PageID.1081-82; Declaration of Luis Colembergue Klujszo ¶¶6-10, R.29-19, PageID.1085-86; Declaration of Daniel Mussap ¶¶6-10, R.29-20, PageID.1090-91. For example, as CFO of Gerdau Summit, Campomizzi was responsible for the entire financial department, which included setting long-term goals and structuring financial strategy to reach those goals. Campomizzi 16:10-20:9, R.29-14, PageID.1026-27. He also had sole responsibility for controllership matters, which required oversight of industrial projects to ensure targets were met. *Id.*

---

[7] Antunes claims his interview was a "sham" and Belloc preselected Campomizzi for the OSC position. Br. 17,19, Doc. 15, Page 29, 31. These claims are not facts found within the record. They are speculation Antunes purports to support with citations to struck portions of his affidavit. Further, as discussed above, it was not Belloc who ultimately selected Campomizzi for the role, but rather, the leadership team. Opn. 5, R.50, PageID.1984; Tabor Dec. ¶¶17-18, R.29-16, PageID.1075.

11

In addition, Campomizzi has a degree in industrial engineering from Federal University of Minas Gerais in Brazil and executive education in valuation (i.e., how to evaluate and develop strategies to maximize a company's value) from Insper, a leading business school in Brazil. Campomizzi 8:11-10:18, 25:4-25, R.29-14, PageID1024-25, 1028. His extensive work experience includes experience in the steel industry, as well as in strategy and financial planning. Campomizzi 10:19-11:12, 12:20-14:7, R.29-14, PageID.1025-26. While pursuing his industrial engineering degree, Campomizzi interned as a controller at a steel company in Brazil, Usiminas, and following his graduation in 2012, was hired into the leadership development program at Gerdau Acomina, a former Gerdau S.A. subsidiary. *Id.* During this program, Campomizzi rotated between system management and cost management work at a steel mill and strategy and financial planning work in an office setting. *Id.* Then, in June 2013, he was hired as a strategic financial planning specialist for Gerdau Acos Brazil, a Gerdau S.A. subsidiary, where he remained until he was hired as CFO for Gerdau Summit. Campomizzi 14:8-15:24, R.29-14, PageID.1026.

### d.    Antunes' December 6, 2019, Position Elimination.

On December 6, 2019, following the VSIP, Macsteel's leadership team eliminated three positions as part of a company-wide cost savings effort. Opn. 5, R.50, PageID.1984; Rodrigues 205:16-211:25, 216:15-18, R.29-8, PageID.851-54.

As a result, Antunes, and two other impacted employees – a 24-year-old Hispanic man and a 23-year-old white woman – were terminated. Opn. 5, R.50, PageID.1984; Tabor Dec. ¶¶19-21, R. 29-16, PageID.1075.

Antunes was not replaced following his position elimination. Tabor Dec. ¶20, R. 29-16, PageID.1075; *see also* Opn. 5, R.50, PageID.1984. His job duties were absorbed by other Macsteel employees. Opn. 5, R.50, PageID.1984; Tabor Dec. ¶21, R.29-16, PageID.1075, Belloc 137:25-139:13, R.29-11, PageID.950-51.

### C.    Relevant Procedural History.

Antunes brought this lawsuit, asserting claims for (1) breach of contract/wrongful discharge; (2) discrimination under 42 U.S.C. §1981 on the basis of alienage; (3) discrimination and conspiracy to engage in discrimination on the basis of alienage/national origin, age, and sex, in violation of the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"); (4) violation of the Equal Pay Act ("EPA"); (5) tortious interference with an employment contract; and (6) tortious interference with an advantageous business relationship and expectation. Compl. R.1, PageID.1-64.

On March 24, 2021, Antunes filed a partial motion for summary judgment on his breach of contract claim, attempting, improperly, to import Brazilian law into an at-will employment relationship based in Michigan and governed under Michigan law. Pl's Mtn. Summary Judgment, R.28-1, PageID.1327-60. Defendants also filed

13

a motion for summary judgment on all counts of the Complaint. Defs' Mtn. Summary Judgment, R.29, PageID.634-681. In response to Defendant's motion, Antunes submitted an affidavit with numerous incorporated exhibits, which Defendants moved to strike on the grounds that it contradicted Antunes' prior deposition testimony, served solely as a vehicle to present conclusory statements and legal arguments, and Antunes lacked personal knowledge and could not authenticate the documents in question. Defs' Mtn. to Strike, R.37-R.37-2, PageID.1620-1689.

### 1.    Opinion & Order.

On August 24, 2022, the District Court issued its Opinion & Order, which granted in part and denied in part Macsteel's motion to strike, denied Antunes' motion for partial summary judgment, and granted Defendants' motion for summary judgment. Opn., R.50, PageID.1980-2024.

### a.    Motion to Strike.

Considering the motion to strike first, the District Court correctly determined all paragraphs of Antunes' affidavit, except paragraphs 3 and 6-8, were improper because they contradicted his prior deposition testimony and served as a vehicle for improper attorney argument. Opn. 9-11, R.50, PageID.1988-90. The District Court granted Defendants' motion in part on that basis. *Id.* Because the District Court did not rely on exhibits incorporated within the affidavit, it denied Defendants' motion to strike same. Opn. 11, R.50, PageID.1990.

###### b.     Breach of Contract.

Next, the District Court considered the parties' cross-motions for summary judgment on Antunes' breach of contract claim. Opn. 12, R.50, PageID.1991. In denying Antunes' partial motion for summary judgment and granting Defendants' motion, the District Court concluded there was no genuine dispute of fact that Brazilian law did not control the terms of Antunes' employment with Macsteel. Opn. 12-20, R.50, PageID.1991-99. In doing so, it considered the following issues:

> The first is whether Antunes's employment agreement provided that he could be terminated only for cause. The second is whether, if the agreement provided that Antunes could be terminated at will, that provision is unenforceable.

Opn. 12-13, R. 50, PageID.1991-92.

Regarding the first issue, whether Antunes could only be terminated for cause, the District Court explained employment typically was terminable at will by either party under Michigan law. Opn. 13, R. 50, PageID.1992. It further stated: "[W]here an employment contract unambiguously provides for termination at will, the agreement of the parties will be respected." *Id.* Because Antunes' signed offer letter from Macsteel stated "[Antunes's] employment may be terminated by either [Antunes] or Gerdau Macsteel at any time," the District Court found "clear and unambiguous language confirm[ing] Antunes was terminable at will." Opn. 14, R. 50, PageID.1993; *see also* Opn. 16, R. 50, PageID.1995.

As part of its two-step analysis, the District Court next concluded the at-will

15

provision in the offer letter was enforceable under a choice-of-law analysis. First, it noted the offer letter stated it was governed by Michigan law. *Id.* Second, it rejected Antunes argument that, through the application of Michigan law, certain rights and entitlements of Brazilian law should be imputed, as there was no factual or legal basis to ignore the parties' choice of law (Michigan) identified in the offer letter. Opn. 16, 18, R. 50, PageID.1995. 1997; May 7, 2008 Offer Letter, R.29-3, PageID.778-79.

### c.    Alienage and National Origin Discrimination.

The District Court granted summary judgment to Defendants on Antunes' claims of discrimination. Regarding his claim of alienage discrimination in violation of §1981, the District Court first noted, correctly, that Sixth Circuit precedent does not recognize a claim of alienage discrimination under §1981. Opn. 22-23, R.50, PageID.2001-02. The District Court went further, explaining that even if recognized, Antunes offered "no facts tending to show that alienage was the cause of his lack of promotion, lack of increase in his compensation, or his termination." Opn. 23, R.50, PageID.2002. Using the same reasoning, the District Court granted summary judgment on Antunes' claims of national origin, age, and sex discrimination, asserted under the ELCRA, and which were based upon the same set of facts. *Id.*

Specifically, regarding his claim of alienage and national origin discrimination, the District Court disagreed Antunes supplied direct evidence of

discrimination because his purported evidence required an inference to reach the conclusion Antunes sought. Opn. 24, R.50, PageID.2003. It then explained there was no genuine dispute of material fact about whether there was circumstantial evidence of discrimination because Antunes did not set forth evidence showing an inference of unlawful discrimination necessary to establish a *prima facie* case. Opn. 25, R.50, PageID.2004. As the District Court explained, because Campomizzi is Brazilian, and because Antunes was terminated as part of a reduction-in-force that included non-Brazilians, the record lacked evidence to infer he was treated differently than similarly situated, nonprotected employees. Opn. 26, R.50, PageID 2005. It also found the evidentiary record established Blackwell, a U.S. citizen and Antunes' other alleged comparator for purposes of pay and compensation, was not similarly situated because her job duties were vastly different than Antunes' duties. Opn 26-27, R.50, PageID.2005-06.[8] Finally, the District Court concluded any isolated statements relied upon by Antunes were, as a matter of law, insufficient to establish an inference of unlawful discrimination based upon national origin. Opn. 28-29, R.50, PageID.2007-08.

---

[8] The District Court also determined Antunes was not similarly situated to several other Macsteel employees. Opn. 28, R.50, PageID.2007. Antunes does not raise this issue on appeal.

### d.    Age Discrimination.

With respect to his ELCRA claim of age discrimination in his compensation and promotion eligibility, the District Court found Antunes' chosen comparator, Blackwell, was in her fifties, and thus, not outside his protected class. Opn. 30-31, R.50, PageID.2009-10. As to the OSC position, the District Court determined Antunes established a *prima facie* case of discrimination on his selection claim but found no genuine dispute of material fact that Defendants' legitimate, nondiscriminatory reason for selecting Campomizzi was not pretextual. Opn. 38-39, R.50, PageID.2017-18. It concluded the record did not show Antunes was the "plainly superior candidate," or contain other probative evidence of pretext. *Id.* Antunes did not point to any evidence of a discriminatory atmosphere, degrading comments about capabilities of individuals in a protected class, evidence of irregularities in the application and selection process, inconsistent reasons for the decision made, or a lack of members of the same protected class in supervisory positions to support a claim of pretext. *See* Opn. 38-42, R.50, PageID.2017-21.

As to his termination, the District Court found no *prima facie* case of age discrimination. *See* Opn. 33, R.50, PageID.2012. First, the evidence showed Antunes was terminated with two other employees as part of a reduction-in-force and there was no evidence suggesting he was singled out due to his age. Opn. 32-33, R.50, PageID.2011-12. Second, there was no evidence Antunes was replaced by

Campomizzi, rather, the record established Antunes' job duties had been redistributed. *See* Opn. 34, R.50, PageID.2013. The District Court also was not persuaded by Antunes' argument that he was replaced by a younger U.S. female, who had filled an accounting manager position. *Id.* It explained this argument was premised, improperly, on Antunes' affidavit, which had been struck from the record. *Id.* It further stated the mere fact a person had been hired into a position titled "plant accountant" was not sufficient to generate a genuine dispute of material fact because the record lacked evidence indicating the role was the same as Antunes' former position. *Id.*

### e.    Wage Discrimination.

As to Antunes' wage discrimination claims, which were based upon the same set of facts asserted under the EPA and the ELCRA, the District Court properly granted summary judgment because, as previously discussed, Antunes had not established his role was substantially similar to Blackwell's position. Opn. 29-30, 43, R.50, PageID.2008-09, 2022.

### f.    Tortious Interference.

Lastly, the District Court granted summary judgment on Antunes' claims of tortious interference because Antunes did not present evidence sufficient to overcome the presumption that his employment was at-will. Opn. 44, R.50, PageID.2023.

### 2.    Antunes' Appeal.

This appeal followed. In addition, Antunes filed a labor claim in Brazil asserting the same claims and seeking the same damages and relief asserted in Counts I, VII, and VIII of his Complaint. *See* Notice, R.47-47-4, PageID.1881-1967.

## II.    SUMMARY OF THE ARGUMENT.

Rather than address the merits of this appeal, this Court has the discretion to strike Antunes' appeal because he failed to comply with Fed. R. App. 28. Contrary to the requirements of this rule, Antunes does not provide a concise statement of facts with appropriate citations to the record. He relies upon misconstrued evidence and contested testimony, including paragraphs of an affidavit that have been struck. Furthermore, he has waived appellate review by failing to develop his reasons and contentions for claiming error. At most, he claims, in a perfunctory fashion, that the District Court erred, but it is neither Defendants' nor the Court's responsibility to explain why he believes there was error.

Even if the Court were to review the merits, there is no error to address. The District Court properly granted in part Defendants' motion to strike Antunes' affidavit because it was little more than attorney argument and contradictory testimony. The District Court considered each paragraph asserted before rendering its decision, and Antunes has set forth no reason why this thorough analysis, or ultimate decision to strike, was flawed. He likewise fails to address the District

Court's handling of the exhibits that were incorporated into same.

The District Court next denied Antunes' motion for summary judgment on his breach of contract claim and granted Defendants' motion on same, thereby correctly concluding Antunes could not attempt to shoehorn Brazilian law into an at-will employment relationship governed under Michigan law. There is no basis in fact or law to disturb this finding.

The District Court also properly entered judgment in Defendants' favor on Antunes' claims of discrimination under §1981 and the ELCRA. As to alienage discrimination, the District Court rightly concluded it was not a proper claim under §1981, which Antunes does not dispute. It also correctly found the record devoid of direct or circumstantial evidence of alienage or national origin discrimination (the latter of which Antunes does not contest on appeal).

Regarding his claim of age discrimination, the District Court properly found no direct evidence that age was a motivating factor in the decision to not select Antunes for the OSC position or terminate his position; Antunes' purported "direct evidence" required multiple inferences. There also was no genuine dispute of material fact the record lacked circumstantial evidence of age discrimination. Antunes failed to set forth evidence of a *prima facie* case showing his termination was discriminatory, as well as evidence indicating the decisions to not select him for the OSC position and terminate him as part of a reduction-in-force were pretextual.

The District Court granted judgment on Antunes' pay discrimination claim based on sex in violation of the ELCRA and his EPA claim as well. Both claims were based upon the same set of facts, neither of which yielded a *prima facie* case because Antunes' chosen comparator, Blackwell, had substantially different job duties. Antunes has not identified record evidence that calls this conclusion into question, and the law dictates such claims should be subject to the same disposition. Based on the above, the District Court's Opinion should be affirmed.

## III.    ARGUMENT.

### A.    Standard of Review.

#### 1.    Summary Judgment.

Antunes does not provide a standard of review for decisions to deny summary judgment, which are reviewed for an abuse of discretion. *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994) (quoted in *Kahn v. Dean & Fulkerson, P.C.*, 238 F.3d 421, *3 (6th Cir. 2000)). Regarding review of decisions to grant summary judgment, Defendants agree the standard of review is de novo. *Alexander v. CareSource*, 576 F.3d 551, 557 (6th Cir. 2009). This Court applies the same summary judgment standard as the District Court when reviewing a grant of summary judgment. *Id.*

When deciding a motion for summary judgment under Fed. R. Civ. P. 56, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party and determine "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "[T]he nonmoving party is required to do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994) (quoting *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

The nonmoving party's failure to make a showing of a genuine issue of material fact that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### 2. Motion to Strike.

Antunes does not identify the standard of review for decisions granting a motion to strike. Such a ruling is reviewed under the "highly deferential abuse-of-discretion standard." *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015).

A court abuses discretion only when it "'relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment.'" *Id.* (quoting *Reeb v. Ohio Dep't of Rehab. & Corr.,* 435 F.3d 639, 644 (6th Cir.2006)).

### B. The Court Need Not Review the Merits of this Appeal Because Antunes' Opening Brief Fails to Comply with Fed. R. App. P. 28.

Before turning to the merits of Antunes' appeal, the Court should first consider the threshold question of whether review of the merits is necessary. The Sixth Circuit has declined to engage in appellate review where a party fails to comply with briefing standards required by Fed. R. App. P. 28. *See McCord v. Bd. Of Educ. Of Fleming Cnty.*, No. 17-5548, 2018 WL 1724560, at *2 (6th Cir. Jan. 30, 2018). Antunes' brief invites early dismissal by this Court for two reasons: (1) failure to cite "facts," and (2) waiver of appellate review resulting from failure to set forth discernable arguments challenging the District Court's decision.

### 1. Antunes' Appeal Should be Dismissed Because His Brief Fails to Cite to "Facts."

A party's brief on appeal must contain a concise statement of facts with "appropriate references to the record." Fed. R. App. P. 28(a)(6). A statement of facts should not be improperly argumentative or treat as "facts" contested testimony. *See Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1224 (7th Cir. 1995); *see also* 2A Fed. Proc., L. Ed. § 3:730. That, however, is precisely what Antunes has done.

Rather than comply with Fed. R. App. P. 28(a)(6), he announces to the Court his fact section sets forth those "facts presented to the district court," Br. 4, Doc. 15, Page 16, not facts as they exist within the record.

Antunes' statement of "facts" is flawed for additional reasons. First, not every "fact" statement is supported by an appropriate citation to the record, as required by Fed. R. App. P. 28(a)(6). At times, Antunes writes whole paragraphs before including a single citation. *See, e.g.* Br. 19-21, Doc. 15, Page 31-33. When he does include a citation, the evidence cited frequently is taken out of context or does not stand for the proposition asserted. Take for example, his claim about an alleged "age-based pipeline." As noted in footnote 6, *supra*, the cited deposition testimony does not support the existence of an age-based pipeline. Rather, Hinojosa's cited deposition testimony contradicts such a claim. Hinojosa 108:11-23, R. 36-9, PageID.1601.

More still, Antunes often relies upon his affidavit and incorporated exhibits to make his purported "fact" statements. But the District Court struck all but three paragraphs of the affidavit and did not rely upon the exhibits. Thus, these documents are not part of the record and cannot constitute "facts" for purposes of Antunes' brief.[9] *See Harris v. City of St. Clairsville*, 330 F. App'x 68, 80 (6th Cir. 2008)

---

[9] Antunes does not alert the Court to the fact that he is relying upon an affidavit that has been struck from the record.

(explaining material excluded from the record is not evidence).

A sister court has found improper inclusion of contested testimony as "facts" is misleading and may be an appropriate basis to strike an appellate brief. *Avitia*, 49 F.3d at 1224. The argumentative and misleading nature of Antunes' statement of facts supports this Court's exercise of discretion to strike his appellate brief, rending this appeal moot.

### 2.    Antunes Waived Appellate Review Because He Fails to Set Forth His Reasons and Contentions Upon Which He Relies.

Rule 28(a)(8)(A) of the Federal Rules of Appellate Procedure expressly states an opening brief "must contain . . . appellant's contentions and reasons for them, with citations to the authorities and part of the record on which the appellant relies." This is where Antunes' appeal falls short.

Throughout his opening brief, Antunes claims, in a perfunctory manner, that the District Court committed reversible error, but he fails to identify where or how the District Court erred in its reasoning or application of law (it did not). For example, Antunes summarily claims the District Court erred in striking his affidavit because it did not contradict his prior testimony and instead "revealed information that was not fully explored." Br. 27-28, Doc. 15, Page 39-40. Antunes does nothing to support this contention or explain how the paragraphs struck by the District Court "revealed," rather than "contradicted," his prior testimony. And he repeats these perfunctory conclusions throughout his brief. *See, e.g.*, Br. 33, Doc. 15, Page 45

(stating Belloc's notes and the "age-based 'pipeline'" constituted direct evidence of age discrimination, without explaining how the District Court erred in rejecting same); Br. 34, Doc. 15, Page 46 (stating Karmol's and Marcucci's statements were direct evidence of alienage and national origin discrimination, without explaining how the District Court purportedly erred in rejecting same); Br. 36-37, Doc. 15, Page 48-49 (listing what Antunes believes is evidence of pretext for age discrimination without explaining how the District Court erred in rejecting same); Br. 39-43, Doc. 15, Page 51-44 (claiming he produced sufficient evidence to demonstrate a breach of contract without explaining how the District Court erred in rejecting his arguments); Br. 45-47, Doc. 15, Page 57-59 (stating the District Court erred when granting summary judgment on his EPA and ELCRA pay discrimination based on sex claims, without explaining how the District Court erred, and instead repeating, practically verbatim, his argument made below).

The Sixth Circuit routinely finds waiver of appellate review where, as here, a party fails to develop specific arguments explaining how a district court erred in its analysis and application of the law. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005); *see also McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). There is no reason to deviate

27

from this principle here. The Court should thus dismiss the appeal and affirm the

District Court's judgment.

**C.    Even If Antunes' Appeal Is Not Dismissed, the Factual Record Supports Affirming the District Court's Ruling.[10] [11]**

        **1.    The District Court Did Not Abuse Its Discretion When It Granted in Part Defendants' Motion to Strike.**

                **a.    Antunes Does Not Explain How the District Court Erred When It Determined His Affidavit Contradicted Prior Testimony and Waives Appellate Review Regarding the District Court's Finding That the Affidavit Made Impermissible Legal Arguments.**

It is well understood the abuse of discretion standard is a highly deferential

standard, with abuse found only in limited circumstances. *Ondo*, 795 F.3d at 603.

Antunes has not met this standard. He does not explain how the District Court abused

its discretion. He simply contends the District Court erred because he believes his

affidavit supplements the record rather than contradicts it. Br. 27, Doc. 15, Page 39.

He further purports to argue the District Court erred because "Defendants did not

---

[10] Antunes does not address in his opening brief the District Court's ruling on its claims of tortious interference or conspiracy, waiving appellate review of same. *United States v. Johnson*, 440 F.3d 832, 845-46 (6th Cir. 2006). This is true even if he attempts to raise such an argument in his reply brief. *United States v. Carson*, 560 F.3d 566, 587 (6th Cir. 2009).

[11] Antunes' argument on appeal focuses on Macsteel only. Antunes does not suggest, expressly or implicitly, that the District Court erred when it determined Antunes could not, as a matter of law, maintain his discrimination claims against Ameristeel. *See* Opn. 21, R. 50, PageID.2000. He also does not appear to suggest Belloc should be held individually liable on any claim. As such, he has waived appellate review of same.

demonstrate that each of the statements and evidence detailed in paragraphs 1-39 and exhibits A-Q of Mr. Antunes's Affidavit contradict his deposition testimony with respect to the applicable subject matter." Br. 28, Doc. 15, Page 40.

Addressing Antunes' latter contention, whether Defendants demonstrated each affidavit paragraph and each exhibit contradicted his prior deposition testimony misses the point. "[D]istrict courts generally have broad discretion regarding evidentiary rulings" and "are even empowered to exclude evidence *sua sponte*." *Ondo*, 795 F.3d at 604. Whether Defendants made any particular showing is irrelevant (though Defendants contend their motion to strike made the appropriate showing. *See* Defs' Mtn to Strike, R.37, PageID1620-48.).

To the extent this argument is construed to mean the District Court did not demonstrate each paragraph and exhibit contradicted Antunes' prior testimony, such a contention also fails. The District Court did not strike Antunes' affidavit in its entirety. It retained paragraphs 3 and 6-8, concluding they were properly stated and based on personal knowledge. Opn. 9, R. 50, PageID.1988. Carefully carving out certain paragraphs to retain while striking others demonstrates the District Court did, in fact, analyze which aspects of the affidavit were admissible before striking inadmissible portions. *See Ondo*, 795 F.3d at 604 (explaining courts should reject only inadmissible parts of an affidavit).

To this point, to be admissible, "an affidavit or declaration used to support or

oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In striking the remaining paragraphs of Antunes' affidavit, the District Court explained those paragraphs either contradicted Antunes' prior deposition testimony or contained conclusory statements, legal arguments, and information about which Antunes did not have personal knowledge. *See* Opn. 9-10, R. 50, PageID.1988-89. Such action is consistent with a district court's exercise of discretion. *See Ondo*, 795 F.3d at 605.

Notably, Antunes only contention on appeal is his affidavit did not contradict his deposition testimony. Br. 27, Doc. 15, Page 39. As such, he waived any argument regarding a majority of the affidavit, *Johnson*, 440 F.3d at 845-46, which was struck because it attempted "to create factual disputes" by presenting "conclusions of law and ultimate fact" and "statements that are outside of Antunes's personal knowledge." Opn. 10, R. 50, PageID.1989; *see also* Defs' Mtn. to Strike 15-28, R.37, PageID.1634-1647. As for the paragraphs that were struck because they contradicted Antunes' prior testimony, Antunes makes no effort to identify which paragraphs are at issue or how the District Court erred in its analysis. It is neither Defendants' nor this Court's duty to make such an argument for him. *McPherson*, 125 F.3d at 995-96. The District Court's decision should be left undisturbed.

    **b.**      **Antunes Fails to Demonstrate How the District Court Purportedly Erred by Not Considering the Exhibits Incorporated into His Affidavit.**

Antunes contends the District Court erred by not considering the exhibits attached to his affidavit, and suggests they were not considered because they were presented in an inadmissible manner. Br. 28, Doc. 15, Page 40. The District Court, however, did not strike the exhibits or otherwise suggest they were improper because of admissibility. *See* Opn. 7-11, R.50, PageID.1986-90. The District Court simply did not rely upon them. Opn. 11, R. 50, PageID.1990. Antunes offers no basis to suggest this was an abuse of discretion and waived appellate review of the issue. *Johnson*, 440 F.3d at 845-46; *McPherson*, 125 F.3d at 995-96.

If the Court considers this issue, it was proper for the District Court to not rely upon the exhibits. At a minimum, Antunes' incorporation of Exhibits C, D, E, G, H, I, K, L, M, N, O, and Q into his affidavit was improper because he lacked personal knowledge of the documents, speculated as to the meaning of their contents, and could not authenticate them. *See* Defs' Mtn. to Strike 15-28, R.37, PageID.1634-1647. It is well established affidavits lacking personal knowledge and which only give an "individual's impression of what others in the organization were thinking" cannot be used to defeat summary judgment. *Jones v. Butler Metro. Hous. Auth.*, 40 F. App'x 131, 134–35 (6th Cir. 2002). Affidavits and their exhibits also are improper vehicles to make attorney argument. *See Onge v. Livingston Cty.*,

No. 04-71329, 2005 WL 8154803, at *1-2 (E.D. Mich. July 8, 2005). This Antunes does not dispute; he does not dispute he lacks personal knowledge or makes speculative arguments with respect to many of these exhibits. His only argument pertains to their admissibility. Br. 28-29, Doc. 15, Page 40-41 (arguing only that the exhibits would be submitted in a form admissible at trial). He therefore waives any argument pertaining to these issues. *McPherson*, 125 F.3d at 995-96.

Further, a document must be properly authenticated before it can be submitted to defeat summary judgment even if it is not in an admissible form for purposes of summary judgment. *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 532 n.5 (6th Cir. 2002) (striking document attached to a summary judgment motion that was not properly authenticated); *United States Fire Ins. Co. v. City of Warren*, No. 10-CV-13128, 2012 WL 13006156, at *2 (E.D. Mich. June 12, 2012) (collecting cases regarding same). Antunes offers no argument to suggest the exhibits at issue were properly authenticated. His argument about admissibility thus misses the mark. For these reasons, the District Court properly declined to consider the exhibits and its judgment should be affirmed.

### 2. The District Court Properly Exercised Its Discretion to Deny Antunes' Partial Motion for Summary Judgment on His Breach of Contract Claim and Correctly Entered Judgment in Defendants' Favor on Same.

In his opening brief, Antunes makes the perfunctory conclusion that Macsteel breached its alleged employment contract with him (or that genuine issues of

material fact remain regarding breach) for two reasons: (1) there was a valid employment contract between Antunes and Macsteel; and (2) because Antunes was a Brazilian expatriate, he was employed by Macsteel under a contract that imputed Brazilian labor law, including certain conditions, such as he could only be terminated for just cause and was entitled to payment of certain severance benefits, among other things, since those aspects of Brazilian law are "inalienable" and "more favorable" to Antunes. Br. 39-41, Doc. 15, Page 51-53.

The District Court found there was no evidence in the record to suggest Antunes' employment was anything but at-will, and thus, no basis to conclude he could only be terminated for just cause. *See* Opn. 14, R.50, PageID.1993. With respect to whether Brazilian law should have governed Antunes' employment with Macsteel, the District Court rejected Antunes' arguments on this point, finding instead there was no basis to ignore the parties' choice of law identified in the offer letter. Opn. 16-20, R.50, PageID.1995-99. *Accord Wise v. Zwicker & Associates, P.C.*, 780 F.3d 710, 715 (6th Cir. 2015). In making this determination, the District Court analyzed "the laws which subsist[ed] at the time and place of the making of a contract, and where it [was] to be performed, enter[ed] into and form a part of it, as if they were expressly referred to and incorporated in its terms." Opn. 17, R.50, PageID.1996 (citing Restatement (Second) of Conflict of Laws § 187(2)). In conducting its analysis, it noted Antunes did not specify where the agreement was

made, *id.*, which Antunes does not dispute on appeal. The District Court then found it was undisputed the employment agreement was to be performed in Michigan and contained an express choice-of-law clause, stating Michigan law would govern, *id.*, which Antunes again does not dispute on appeal.

Rather, on appeal, Antunes makes the conclusory argument that certain rights and entitlements under Brazilian law should be imputed into the Michigan offer letter because "[t]he provision in the Gerdau MacSteel offer of employment indicating that Mr. Antunes's employment relationship is governed by Michigan law is unenforceable pursuant to section 187(2) of the Restatement (Second) Conflicts of Law . . . ." Br. 41, Doc. 15, Page 53. This argument was rejected by the District Court, explaining section 187 "'instructs courts to generally respect choice-of-law provisions.'" Opn. 18, R. 50, PageID.1997. Antunes does not address this finding in any substantive manner in his opening brief, waiving appellate review. *See McPherson*, 125 F.3d at 995-96.

Even if the Court were to consider the argument, the District Court properly observed choice-of-law provisions are disregarded only in limited circumstances: (1) where the "'chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice'"; or (2) "the application of the chosen state's law 'would be contrary to a fundamental policy' of a state that has a materially greater interest than the chosen state in the disputed issue

34

and that would have supplied the governing law in the absence of the parties' selection." Opn. 18, R. 50, PageID.1997. Regarding the first inquiry, the District Court found a substantial relationship between Michigan and the parties and transaction, particularly as Antunes lived and worked in Michigan, Macsteel is located in Michigan, and Antunes was terminated in Michigan. Opn. 18-19, R. 50, PageID.1997-98. As to the second, the District Court did not agree application of Michigan law would be contrary to a fundamental policy. Opn. 19, R. 50, PageID.1998. Again, Antunes does not offer any detail to explain how these findings were erroneous.

Because Antunes cannot demonstrate his position was anything other than at will or governed by Brazilian law, the District Court did not err in granting summary judgment on this claim to Defendants.

> **3.** **The District Court Correctly Concluded There Were No Genuine Disputes of Material Fact Regarding Antunes' Claims of Discrimination Under § 1981, the ELCRA, and the EPA.**

Antunes contends "genuine issues of material fact remain with respect to [Antunes'] claims of discrimination and interference with protected rights in violation of the ELCRA and 42 U.S.C. §1981." Br. 29, Doc. 15, Page 41. Although he does not specify how the District Court erred, it is assumed, based on the tenor of the brief, that Antunes believes it erred by finding neither direct nor circumstantial evidence of discrimination. *See* Br. 33, 35, Doc. 15, Page 45, 47. However, his self-

serving belief does not make it so, and his failure to identify any deficiency with the District Court's reasoning signals there is no error.

### a.    Alienage and National Origin Discrimination.

Antunes claims he was discriminated against based on his alienage in violation of §1981, as well as based on his national origin, in violation of the ELCRA with respect to his eligibility for pay increases and promotions. Br. 34, Doc. 15, Page 46. Before turning to merits of this argument, it must be first noted Antunes cannot challenge the District Court's grant of summary judgment on Antunes' claim of alienage discrimination. The District Court concluded Antunes could not prevail on a claim of alienage discrimination in violation of §1981 because, under Sixth Circuit precedent, it is an improper vehicle to assert alienage discrimination. Opn. 22-23, R. 50, PageID.2001-02 (citing *El-Zabet v. Nissan N. Am., Inc.*, 211 F. App'x 460, 462 (6th Cir. 2006); *Salem v. City of Pontiac Sch. Dist.*, No. 81-1508, 1985 WL 12820, at *1 (6th Cir. Jan. 11, 1985)). Antunes does not challenge this conclusion, waiving any argument he was discriminated against based on alienage. *See McPherson*, 125 F.3d at 995-96.

Regardless of waiver, to survive summary judgment on his claims of alienage and national origin discrimination, Antunes was required to come forth with more than a scintilla of evidence showing direct or circumstantial evidence of discrimination based upon alienage or national origin. This he has not done.

36

As an initial matter, although the District Court concluded Antunes could not establish alienage or national origin discrimination based on circumstantial evidence, *see* Opn. 23-29, R. 50, PageID.20040-08, he does not challenge that ruling on appeal. His appeal focuses solely on whether there was direct evidence of discrimination based on alienage and national origin. He has thus waived any argument on this issue. *See Johnson*, 440 F.3d at 845-856.

Regarding the question of direct evidence, Antunes contends he produced direct evidence of discrimination in the form of statements from Karmol, Macsteel's Vice President Group Controller, and Marcucci, Belloc's predecessor as President. He summarily argues, as he did before the District Court, that Karmol's and Marcucci's statements indicating Antunes' compensation and promotion eligibility should be determined by Gerdau S.A. because he was a Brazilian expatriate, are direct evidence of discrimination. But Antunes cannot rely upon these alleged statements as they are found within his affidavit, which was struck from the record. *See Harris*, 330 F. App'x at 80. They also cannot be construed as direct evidence.

To this point, as the District Court properly observed, direct evidence of discrimination is evidence "'requir[ing] the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Alberty v. Columbus Twp.*, 730 F. App'x 352, 356 (6th Cir. 2018) (quoting *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008)). One must not be required to "draw any

inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003).

Applied here, as the District Court properly observed, the statements Antunes relies upon as direct evidence of alienage and national origin discrimination require several inferences to reach Antunes' desired conclusion, including an inference that the denial of a promotion, purported failure to increase Antunes' compensation, or Antunes' termination was in fact motivated, at least in part, by his citizenship or Brazilian national origin, and not for other legitimate business reasons. Opn. 24, R.50, PageID.2003. Because Antunes offers no basis to find this reasoning erroneous, there is no basis to disturb the District Court's ruling on appeal.

### b.    Age Discrimination.

Similar to Antunes' claims of alienage and national origin discrimination, to survive summary judgment on his claim of age discrimination under the ELCRA, Antunes was required to set forth direct or circumstantial evidence of age discrimination. Again, he has failed to do so.

### (1)    The District Court Properly Held Antunes' Purported Direct Evidence of Age Discrimination Was Not Direct Evidence Because It Requires Inferences.

In his opening brief, Antunes argues he produced direct evidence that age was a motivating factor in the decision to reject him for the OSC position and

subsequently terminate his employment. Br. 33, Doc. 15, Page 45. He asserts Belloc's notes about the ages of certain candidates and other testimony pertaining to the purported "age-based 'pipeline'" was direct evidence of age discrimination. *Id.* These arguments were rejected by the District Court because neither was, in fact, direct evidence. Opn. 30-31, R. 50, PageID.2009-10. Rather, as the District Court correctly found, Antunes' reliance on Belloc's notes "require[s] an inference that [Belloc] and other Macsteel employees did in fact consider candidates' ages in selecting an OSC and that the decision to select Campomizzi, rather than Antunes . . . was at least in part motivated by Antunes's age." Opn. 30, R. 50, PageID.2009. Direct evidence does not permit such inferences. *Johnson*, 319 F.3d at 865.

As to Antunes' concocted theory of an "age-based pipeline,"[12] the District Court likewise determined Antunes' belief of same did not compel the conclusion Antunes was discriminated against based upon age because of the required inferences. Opn. 30, R. 50, PageID.2010. In that same vein, it also determined Antunes' belief – that the OSC would be trained to replace the CFO of Gerdau S.A. in Brazil, which Antunes reported required its employees to retire at age 60 – did not compel the conclusion Antunes was in fact not chosen based on age. Opn. 30-31, R.50, PageID.2009-10.

---

[12] As discussed *supra*, the District Court found no support for Antunes' assertion that there was an "age-based pipeline." Opn. 41 n. 13, R. 50, PageID.2020.

Antunes does not offer any argument to explain how the District Court erred in reaching these conclusions. Instead, he simply concludes he produced direct evidence and trumps up this claim by referring to his unsupported belief that Campomizzi was preselected for the OSC role and lacked minimum qualifications for the position. Br. 33, Doc. 15, Page 45. As noted in footnote 7 above, this assertion is not a fact found within the record. It is speculation set forth in Antunes' affidavit, which the District Court struck, and thus, cannot be used to defeat a motion for summary judgment. *See Harris*, 330 F. App'x at 80. Regardless, Antunes fails to offer any reasoning behind why this purported "evidence" establishes direct evidence of age-based animus, and thus has waived the argument. *McPherson*, 125 F.3d at 995-96.

Recognizing, albeit belatedly, that Belloc was not solely responsible for Campomizzi's hire for the OSC position, Antunes next asserts, as part of his direct evidence argument, that, "in accordance with the 'Cat's Paw' doctrine," Belloc's "age-based animus and preference for Mr. Campomizzi because of his youth should be imputed to the Gerdau MacSteel leadership team . . . ." Br. 33-34, Doc. 15, Page 45-46. This conclusory argument is being raised for the first time on appeal and is not properly before the Court. *United States v. Universal Mgmt. Servs., Corp.*, 191 F.3d 750, 758 (6th Cir. 1999) ("Because the issue was not raised in the district court below, Appellants have waived their right to argue the point on appeal.").

40

Overall, there is no basis to overturn the District Court's ruling on this count.

>            **(2)    The District Court Properly Held Antunes**
>            **Failed to Establish Circumstantial Evidence of**
>            **Age Discrimination.**

Where there is no direct evidence of discrimination, one must establish a claim through circumstantial evidence using the *McDonnell Douglas* burden-shifting approach. *Mitchell v. Toledo Hosp.*, 964. F.2d 577, 582 (6th Cir. 1992). Under this framework, a plaintiff must first establish a *prima facie* case of age discrimination, showing he: (1) is a member of the protected class; (2) was subjected to an adverse action; (3) was qualified; and (4) was treated less favorably than younger, similarly-situated employees or replaced by a younger individual. *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 521-22 (6th Cir. 2008). Only if a plaintiff sets forth this *prima facie* case is a defendant required to produce a legitimate, non-discriminatory reason for the adverse action, which, once produced, shifts the burden back to the plaintiff to establish pretext. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011). Here, the District Court properly concluded there were no genuine disputes of material fact that Antunes could not set forth circumstantial evidence of discrimination.

>            **(a)    Antunes Failed to Set Forth a *Prima Facie***
>            **Case of Age Discrimination Because the**
>            **Circumstances Did Not Give Rise to an**
>            **Inference of Unlawful Discrimination.**

Antunes argues "[t]he evidence in the record is sufficient to demonstrate . . .

41

that genuine issues of material fact remain with respect to *prima facie* cases of the disparate treatment age discrimination against Mr. Antunes," specifically as it pertains to: (1) the decision to hire Campomizzi, rather than Antunes, for the OSC position; and (2) "concomitantly terminate Mr. Antunes's employment." Br. 35, Doc. 15, Page 47. Antunes then states "[t]his conclusion ensues" because: (1) Antunes was 51 years of age when the adverse decisions were made; (2) he was qualified for the OSC position and his former position; and (3) the adverse decisions were made under circumstances giving rise to an inference of unlawful discrimination because of Belloc's notes, an "age-based pipeline," evidence purportedly showing the OSC position was Antunes' job with a different title, Antunes' belief in his qualifications, his belief the decision to terminate him was made before his interview for the OSC position, and his belief Campomizzi was pre-selected for the OSC position and to replace Antunes. Br. 35-36, Doc. 15, Page 47-48. Antunes does not provide any analysis regarding how these reasons demand his requested conclusion or demonstrate how the District Court erred. He has thus waived appellate review on the issue. *McPherson*, 125 F.3d at 995-96.

Even if appellate review is not waived, the fact remains the District Court did not err. As it relates to Antunes' first claim – the decision to hire Campomizzi, rather than Antunes, for the OSC position – the District Court concluded Antunes had established a *prima facie* case of age discrimination. Opn. 35-36, R. 50,

PageID.2014-15. As such, Antunes' purported argument on this issue is unfounded.

Regarding Antunes' second claim – whether Antunes established a *prima facie* case of discrimination related to his termination – the District Court correctly explained that, where, as in Antunes' case, a termination results from a reduction-in-force, "'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons'" is necessary to establish a *prima facie* case of discrimination. Opn. 32, R. 50, PageID.2011 (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547 (6th Cir. 2004)). It then properly concluded Antunes failed to set forth a *prima facie* case of age discrimination because there was not sufficient evidence to suggest he was singled out for impermissible reasons when his position was eliminated. *Id.* On appeal, Antunes does not challenge he was required to produce this additional evidence. He also fails to identify any evidence of this sort, implying the District Court correctly found the record devoid of same.

Antunes' reliance on his misinterpretation of Belloc's notes, or his belief of an "age-based pipeline," also is not indicative of error.[13] Belloc's interview notes pertain to interviews for the OSC position, not decisions about whether to keep or eliminate certain roles as part of the reduction-in-force. Antunes' mistaken belief in

---

[13] Antunes did not clearly raise below whether Belloc's notes or the "age-based pipeline" constituted circumstantial evidence of discrimination.

an "age-based pipeline" similarly pertains to hiring for the OSC position, and not to decisions being made regarding the reduction-in-force.

Furthermore, although Antunes may believe the OSC position was his job with a different title, the District Court analyzed whether Campomizzi had replaced Antunes, and found no dispute, based on Antunes' own testimony, that he did not perform all the job duties for which the OSC position was responsible, and thus, was not replaced by Campomizzi. Opn. 33, R. 50, PageID.2012 ("[Antunes] then looked to the OSC job description, which listed 17 duties, and testified that he was not performing at least five of those duties . . . . Evidence of some job overlap does not indicate than an employee was replaced."). Antunes does not offer any basis to find this conclusion was made in error.

Antunes' attempt to argue on appeal that: (1) he was the most qualified for the OSC position; (2) the decision to terminate him was made before his interview for the OSC position; and (3) Campomizzi was pre-selected for the OSC position and to replace Antunes, is improper. Antunes did not raise these issues below in support of his *prima facie* case of age discrimination, and thus, cannot raise them now on appeal. *Universal Mgmt. Servs., Corp.*, 191 F.3d at 758. He also cannot rely on these assertions on appeal. As explained *supra*, such contentions are legal arguments contained within Antunes' affidavit, *see* Br. 17-19, Doc. 15, Page 29-30, which was struck by the District Court. *See* Section III.C.1, *supra*. Antunes cannot rely upon

material struck from the record to claim error. *Harris*, 330 F. App'x at 80.[14]

Moreover, Antunes offers no basis, other than his self-serving belief, to doubt

Campomizzi's qualifications, which is not enough to defeat summary judgment.

*Gale v. Donohue*, 824 F. App'x 304, 312 (6th Cir. 2020). The District Court's

decision should thus be affirmed.

> **(b)    Antunes Does Not Identify Any Basis to Find Error with the District Court's Conclusion That There Was No Evidence of Pretext.[15]**

Similar to his argument about his *prima facie* case, Antunes argues there are

genuine issues of fact regarding his claim for age discrimination. He contends there

is evidence of pretext related to the decisions (1) to hire Campomizzi, rather than

Antunes, for the OSC position; and (2) to terminate Antunes's employment. Br. 36,

Doc. 15, Page 48. Without any further specificity, Antunes lists the following in

support of this argument: (1) Belloc's notes contain the ages of candidates; (2) the

"age-based pipeline"; (3) the OSC position was the same as Antunes' job and he was

---

[14] The District Court articulated additional reasons why Antunes could not establish a *prima facie* case of age discrimination related to his termination. Opn. 32-35, R. 50, PageID.2011-14. Antunes does not cite to or rely upon those additional reasons to argue he established a *prima facie* case. Br. 35-36, Doc. 15, Page 47-48. He has thus waived any claim the District Court erred in that regard. *Johnson*, 440 F.3d at 845-46.

[15] Antunes does not argue the District Court erred in finding Macsteel set forth a legitimate, nondiscriminatory reason for its decision to hire Campomizzi over Antunes. He has thus waived any claim that the District Court erred in that regard. *Johnson*, 440 F.3d at 845-46.

the most qualified and his interview was a sham because Campomizzi had been preselected; (4) email communications relate to Campomizzi's selection; (5) Belloc purportedly concocted a scheme to create a pretextual justification, which should be imputed to Macsteel leadership under the Cat's Paw doctrine; (6) Antunes was the only employee eliminated in the Jackson office; (7) there was no cost savings with his position elimination; and (8) Antunes was not offered an available plant accountant position for which a younger female was later selected. Br. 36-37, Doc. 15, Page 48-49.

As a primary matter, because the District Court never considered the question of pretext within the context of Antunes' termination, it would be improper for the Court to render any ruling regarding same. *Maldonado v. Nat'l Acme Co.*, 73 F.3d 642, 648 (6th Cir. 1996). In any event, Antunes does not specify which of the above propositions relate to the hiring of Campomizzi and which relate to his termination, nor does he offer any explanation about how this list equates to finding the District Court erred. As stated before, it is not this Court's task to make Antunes' arguments for him. Antunes has thus waived appellate review given the perfunctory treatment of his claims. *See McPherson*, 125 F.3d at 995-96.

If the Court were to consider the merits of Antunes' argument, there would be no basis to find error. Regarding the selection for the OSC position, the District Court correctly stated that, to establish a pretext, there must be proof the proffered

46

reason had no basis in fact; the proffered reason did not actually motivate the action; or the proffered reason was insufficient to motivate the action, none of which Antunes has demonstrated are available here. Opn. 37-38, R. 50, PageID.2016-17.

First, regarding factors 3 through 6 of Antunes' list above, such contentions are legal arguments found within his affidavit, *see* Br. 17-19, Doc. 15, Page 27-29, which was properly struck by the District Court, *see* Section III.C.1, *supra*, and cannot now be relied upon to claim the District Court erred. *Harris*, 330 F. App'x at 80.

Second, Antunes did not rely upon Belloc's notes as evidence of pretext below, *see* Resp. to Defs' Mtn for SJ 30-31, R.35-1, PageID.1356-57; Opn. 39-40, R. 50, PageID.2018-19. Nor did he rely on the Cat's Paw doctrine. As such, he cannot now raise these claims for the first time on appeal. *Universal Mgmt. Servs., Corp.*, 191 F.3d at 758.

Third, regarding the "age-based pipeline," the District Court did not find support in the record for such a contention and instead found the argument to be "mere conjecture." Opn. 41, R. 50, PageId.2020. Antunes has not made any effort to demonstrate this finding was made in error. "[N]onmoving parties cannot use 'speculation, conjecture, or fantasy' to avoid summary judgment." *Gale*, 824 F. App'x at 312 (quoting *K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 823 (6th Cir. 2018)).

Fourth, the District Court properly observed Antunes was terminated with two younger employees in the company-wide reduction-in-force. Opn. 41, R.50, PageID.2020. Antunes does not provide any argument why the District Court erred in considering the entirety of the reduction-in-force when making this determination. He also does not dispute he failed to explain to the District Court why his belief, that there was no cost savings with the position elimination, was pretext for age discrimination. *Compare* Br. 36-37, Doc. 15, Page 48-49, *with* Opn. 41, R.50, PageID.2020. Whether there were cost savings is irrelevant in the absence of evidence indicating age-based animus, something which Antunes does not dispute the record lacked. *See* Opn. 37, R.50, PageID.2016 (citing authority stating pretext requires proof the legitimate reasons proffered by an employer are false and pretext for discrimination).

Finally, the District Court properly concluded Macsteel's purported refusal to transfer Antunes to a plant accountant position following his elimination was not evidence of pretext. *See* Opn. 41-42, R. 50, PageID.2020-21. It is well established Defendants had no obligation to provide Antunes alternative employment following his position elimination. *See Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 623 (6th Cir. 2006). Liability would only arise if other displaced employees outside of the protected class were provided alternative employment. *Id.* Here, there was no such evidence, Opn. 41-42, R. 50, PageID.2020-21, and Antunes does not identify

any similarly situated employee or other evidence the District Court misevaluated when making this conclusion. This contention is thus without merit and there is no basis to disturb the District Court's ruling.

### c.    Wage Discrimination.

Antunes contends he was subjected to pay discrimination based on sex, in violation of the ELCRA, because "Ms. Blackwell was paid substantially more than Plaintiff [Antunes] although they had the same pay grade and he had far more extensive job duties and responsibilities than Ms. Blackwell." Plf's Resp. to Defs' Mtn. for Summary Judgment 21, R. 35-1, PageID.1355; *see also* Opn. 29, R. 50, PageID.2008 (discussing Antunes' claim of sex discrimination under the ELCRA, noting he "asserts that he was treated differently than Blackwell regarding pay and promotions"). Ms. Blackwell's pay and job responsibilities also form the basis of Antunes' claim under the EPA. Plf's Resp. to Defs' Mtn. for Summary Judgment 24, R. 35-1, PageID.1358; *see also* Opn. 42, R. 50, PageID.2021. The District Court granted summary judgment to Defendants on these claims because there was no genuine dispute of material fact that Antunes could not establish a *prima facie* case for either. Opn. 29-30, 43, R. 50, PageID.2008-09, 2022.

To survive summary judgment on his pay discrimination claim, Antunes was required to establish a *prima face* case showing he: (1) is a member of a protected class; (2) was subjected to an adverse employment action; (3) was qualified for the

position; and (4) was treated differently than a similarly situated person outside of his protected class. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006). As to his EPA claim, Antunes was required to show "different wages [are paid] to employees of the opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)).

Here, the District Court first determined Antunes failed to establish the fourth element of his *prima facie* case of pay discrimination based upon sex under the ELCRA. Opn. 26, R. 50, PageID.2005; *see also* Opn. 29, R. 50, PageID.2008.[16] Relying upon its analysis provided in connection with Antunes' national origin claim,[17] the District Court discussed at length how Blackwell and Antunes possessed "completely different" jobs and responsibilities, including, among other things, the fact that Blackwell, unlike Antunes, required an "intimate knowledge of the steel-making process" to assess and report on the "details" of financial data, and she was responsible for overseeing the finance of Macsteel's mills, which comprised

---

[16] Antunes initially identified several comparators to the District Court, but then dropped them all except for Blackwell. Blackwell is the only comparator raised on appeal.

[17] Before the District Court, Antunes made certain arguments of national origin discrimination, comparing himself to Blackwell with respect to pay and promotions, He has not raised those issues on appeal.

70 percent of the company's profitability. Opn. 27, R. 50, PageID.2006. Based on this information, it reasoned Antunes' job was not substantially similar to Blackwell's job, and thus, the record lacked evidence showing he was treated differently than a similarly situated person outside of his protected class. Opn. 26, R. 50, PageID.2005; Opn. 29, R. 50, PageID.2008. As Antunes' EPA claim relied upon the same underlying facts, the District Court also concluded Antunes' job was not substantially similar to Blackwell's job. Opn. 43, R. 50, PageID.2022.

Addressing his claim of pay discrimination based on sex in violation of the ELCRA and his EPA claim together, Antunes, on appeal, relies upon the same conclusory arguments he presented to the District Court on his EPA claim, without making any effort to demonstrate how the District Court erred in granting summary judgment. *Compare* Br. 45-46, Doc. 15, Page 57-58, *with* Plf's Resp. to Defs' Mtn. for Summary Judgment 24, R. 35-1, PageID.1358. As explained many times before, conclusory treatment of issues on appeal results in waiver of review. *McPherson*, 125 F.3d at 995-96.

Even if not waived, the District Court did not err in its reasoning. Although Antunes contends, in a summary fashion, that his and Blackwell's work was equal and he received less pay, Antunes offers nothing specific to support his assertions, and the citations relied upon do not stand for propositions asserted. *See* Opn. 43, R. 50, PageID.2022. For example, Antunes cites to his affidavit, but it was largely

struck by the District Court, and the incorporated exhibits were not considered. The deposition testimony, likewise, does not support Antunes' assertion. Blackwell did not testify to having the same job duties, and Boucher testified that, with Blackwell's promotion to Regional Controller, "the scope of the job changed immensely" because she now oversaw "a whole other mill and a downstream facility." Deposition of Brandi Boucher 95:24–96:2, R.36-6, PageID.1572.

Although he failed to establish a *prima facie* case showing an EPA violation, Antunes nonetheless asserts Defendants must set forth evidence of one or more of the four affirmative defenses to EPA liability. Br. 46, Doc. 15, Page 58. However, it is only after this *prima facie* case is established that one must set forth an affirmative defense regarding the pay differential. Because the District Court determined Antunes failed to satisfy his *prima facie* showing, Defendants were not required to do more. It would be improper to consider a matter not decided by the District Court. *Maldonado*, 73 F.3d at 648.

More importantly, because Antunes' claim of pay discrimination based on sex is premised upon the same underlying facts as his EPA claim, his failure to establish a *prima facie* case of pay discrimination based upon sex is fatal to the EPA claim. The Sixth Circuit has held that "'when an Equal Pay Act claim and a Title VII[18]

---

[18] "[I]n interpreting the ELCRA specifically, this [Michigan Supreme] Court has encouraged using as guidance federal precedent interpreting Title VII of the federal

claim arise out of the same set of underlying facts, both stating a charge of wage discrimination, 'the standards of liability under the two statutes are sufficiently similar' that the disposition with respect to the two claims should be the same." *Crowder v. Railcrew Xpress*, 557 F. App'x 487, 494 (6th Cir. 2014) (quoting *Clark v. Johnson & Higgins*, No. 97-4233, 1999 WL 357804, at \*3 (6th Cir. May 28, 1999)). "By the same token, the failure to make out a prima facie case of gender based wage discrimination [ ] also defeats a claim under the EPA." *Id.* Under this guiding principle, the District Court's entry of judgment on these claims should be affirmed.

## IV.    CONCLUSION.

For the foregoing reasons, Defendants-Appellees Gerdau Macsteel, Inc., Gerdau Ameristeel US, Inc., and Rodrigo Belloc request the Court affirm in full the District Court's Order granting in part Defendants-Appellees' motion to strike, denying Antunes' partial motion for summary judgment on his breach of contract claim, and granting their motion for summary judgment on the claims asserted in Appellant Antunes' Complaint.

---

Civil Rights Act, the statute on which the ELCRA was based." *Rouch World, LLC v. Dep't of C.R.*, No. 162482, 2022 WL 3007805, at \*6 (Mich. July 28, 2022).

*/s/ Jaclyn R. Giffen*
Jaclyn R. Giffen (P75316)
jgiffen@littler.com

LITTLER MENDELSON, P.C.
200 Renaissance Center, Suite 3110
Detroit, Michigan 48243
Telephone:       (313) 446-6400
Facsimile:       (313) 446-6405

*Attorneys for Defendants-Appellees*

Dated: December 9, 2022

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon all parties and/or attorneys of record to the above cause herein at their respective addresses as disclosed on the pleadings on December 9, 2022, via:

| | | | |
|---|---|---|---|
| _____ | U. S. Mail | _____ | Facsimile |
| X | ECF Filing | _____ | Hand Delivery |
| _____ | E-Mail | _____ | Federal Express |

*/s/ Jaclyn R. Giffen*
Jaclyn R. Giffen

54

## <u>CERTIFICATE OF COMPLAINCE WITH RULE 32(A)</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C) and 6 Cir. R. 32, the undersigned certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,968 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(5). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Office Word 2016 in Times New Roman 14 point type style.

<div style="margin-left:40%">

*/s/ Jaclyn R. Giffen*
Jaclyn R. Giffen (P75316)
jgiffen@littler.com

LITTLER MENDELSON, P.C.
200 Renaissance Center, Suite 3110
Detroit, Michigan 48243
Telephone:    (313) 446-6400
Facsimile:    (313) 446-6405

*Attorneys for Defendants-Appellees*

</div>

Dated: December 9, 2022

**ADDENDUM**

**DESIGNATION OF RELEVANT DOCUMENTS**

| District Court's Record Entry Number | Description of Document | Page ID |
|---|---|---|
| R. 1 | Complaint | PageID.1-64 |
| R. 28 to R. 28-14 | Plaintiff's Motion for Partial Summary Judgment | PageID.308-633 |
| R. 29 to R. 29-23 | Defendants' Motion for Summary Judgment | PageID.634-1224 |
| R. 33 to R. 33-5 | Defendants' Response to Plaintiff's Motion for Partial Summary Judgment | PageID.1234-1313 |
| R. 35 to R. 35-1 | Plaintiff's Response to Defendant's Motion for Summary Judgment | PageID.1321-1360 |
| R. 36 to R. 36-10 | Plaintiff's Fact Appendix in Support of Plaintiff's Motion for Summary Judgment | PageID.1361-1619 |
| R. 37 to R. 37-2 | Defendants' Motion to Strike | PageID.1620-1689 |
| R. 38 to R. 38-2 | Defendants' Reply Brief in Further Support of Motion for Summary Judgment | PageID.1690-1753 |
| R. 39 | Plaintiff's Reply Brief in Support of Plaintiff's Motion for Partial Summary Judgment | PageID.1754-1764 |
| R. 40 | Plaintiff's Response to Defendants' Motion to Strike | PageID.1765-1806 |
| R. 41 to R. 41-2 | Defendants' Reply in Further Support of Their Motion to Strike | PageID.1846-1867 |

| R. 47 to R. 47-4 | Notice of New Claim | PageID.1881-1967 |
| R. 50 | Opinion & Order | PageID.1980-2024 |
| R. 52 | Notice of Appeal | PageID.2026-2027 |